# Shafer, Appellant, *v.* Cascio et al.

*Appeals—Correction of all errors of inferior courts—Common pleas and justice of peace—Proceedings for possession in landlord and tenant cases—Acts of May 22, 1722, 1 Sm. L. 131, and June 16, 1836, P. L. (1835-6) 784.*

1. On an appeal from a judgment of the court of common pleas in a proceeding instituted originally before a justice of the peace for recovery of possession by a landlord, the Supreme Court will, under the broad powers conferred upon it by the Acts of May 22, 1722, 1 Sm. L. 131, and June 16, 1836, P. L. (1835-6) 784, inquire into the proceedings of the justice of the peace and of the common pleas as regards their regularity and legality.

*Landlord and tenant—Lease—Surrender — Statute of frauds — Act of March 21, 1772, 1 Sm. L. 389.*

2. An express surrender of a lease of lands having a term in excess of three years must be in writing, under the Act of March 21, 1772, 1 Sm. L. 389; and the effectiveness of an alleged new, oral, lease, to constitute surrender by operation of law, will not be decided, where no such lease was proved.

*Landlord and tenant—Oral lease—Tenant at will—Notice to quit — Substitution of oral for written lease — Evidence — Justice of peace — Jurisdiction — Acts of December 14, 1863, P. L. (1864) 1125, and March 31, 1905, P. L. 87—Dismissal of all proceedings— Cost—Restitution—Appeals.*

3. To substitute an oral lease for a written one, protected by the statute of frauds, requires clear evidence, if not clear, precise and indubitable evidence.

4. Where one, who has previously agreed with an owner of property to take over a long-term lease upon default of the original lessees therein, enters into possession of the premises and pays rent to the owner after the occurrence of such default, the new tenant is a substituted lessee under the original lease, and is bound by all its terms, including a prohibition of transfer without the owner's consent.

5. In such case, the substituted lessee cannot be turned into a tenant at will by evidence that, when he was offered a new written lease to sign, and the owner said that if he did not sign it he, the owner, would thereafter consider him a tenant at will, he simply said: "I no sign it; it is all right; I pay you the lease."

6. A provision in a lease that "The premises are not to be under-let or this lease transferred without lessor's consent" etc., held to be binding on all who, at any time, might occupy the position of substituted lessees under the lease, and not upon the original lessee alone.

7. On appeal to the common pleas from a judgment of a justice of the peace, there can be no change in the cause of action; and, if the justice did not have jurisdiction of the cause, the common pleas can have none on appeal.

8. Possession of lands can be recovered in summary proceedings under the Acts of December 14, 1863, P. L. (1864) 1125, and March 31, 1905, P. L. 87, only where the claim is based upon the existence of a tenancy.

9. The Acts of December 14, 1863, P. L. (1864) 1125, and March 31, 1905, P. L. 87, call for notices to quit, and do not cover a case based on the right of immediate reëntry for breach of a covenant in a written lease against subletting.

10. Where, on appeal from a judgment of a justice of the peace in favor of a plaintiff, such plaintiff files in the common pleas a statement setting forth a valid cause of action, sufficient to require an answer from defendant, but fails to sustain it, and thereafter the Supreme Court sets aside the whole proceedings for want of jurisdiction in the tribunals below, the defendant is entitled to a judgment for costs.

11. A writ of restitution will not be awarded, although a judgment in favor of a landlord, under which he recovered possession, is set aside, where the facts of the case show that the landlord can immediately recover in ejectment.

Argued September 28, 1926.    Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 61, March T., 1926, by plaintiff, from judgment of C. P. Somerset Co., Dec. T., 1924, No. 393, on directed verdict for defendant, in case of Charles C. Shafer v. Matt Cascio and Adam G. Berkebile. Judgment for defendant Berkebile affirmed for costs only and all proceedings below dismissed.

Appeal from justice of peace.    Before Berkey, P. J.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendant, Adam G. Berkebile; plaintiff, appealed.

*Error assigned* was, inter alia, direction of verdict for defendant, Adam G. Berkebile, quoting record.

*Charles F. Uhl,* of *Uhl & Ealy,* for appellant.—The agreement inserted in the lease from Hustons to Cascio that Cascio would take over their lease from Shafer in the event of their default, was not a conditional lease from Shafer to Cascio, but merely an agreement on Cascio's part to enter into a new lease if required to do so on the happening of the contingency named: Lea. v. Love, 14 W. N. C. 75; Henderson v. Mfg. Co., 24 Pa. Superior Ct. 422; Cohen v. Smith, 238 Pa. 19; McGrath v. Boston, 103 Mass. 369.

The covenant of Cascio was not to "take over" the whole building upon default by the Hustons, but to take over their lease. The view of the court below was that Cascio became a tenant of the entire premises immediately upon the Huston default, without further act or deed on his part. This view is erroneous, for, had Cascio refused to become a tenant of the entire building or to pay rent therefor, Shafer could not have proceeded against him as a tenant to collect the rent for the premises, but, if Shafer had any right of action, it would have been merely for breach of contract to enter into the agreement: Henderson v. Mfg. Co., 24 Pa. Superior Ct. 422; Proctor v. Benson, 149 Pa. 254; Cohen v. Smith, 238 Pa. 19.

In Lowry v. Atlantic Coal Co., 272 Pa. 19, there was an assignment by the prior lessees with the landlord's consent.

The attempted assignment of the lease to Berkebile by Cascio conferred no rights upon him.

The evidence shows that the tenancy of Cascio of the whole building was a tenancy from month to month for an indeterminate period under the verbal agreement with Shafer. Cascio never had a written lease for the entire premises or any such rights to surrender; his

right to enter into a lease or assume the Huston lease by a proper paper was optional with Shafer.

Under the circumstances it was entirely unnecessary that there be a written paper signed by Cascio surrendering any rights, which it is asserted that he had under the leases in question: Auer v. Penn, 92 Pa. 444; Evans v. McKanna, 89 Iowa 362, 56 S. W. 527; Rafferty v. Klein, 256 Pa. 481.

*Norman T. Boose,* of *Boose & Boose,* for appellee.— The language employed by the parties could not be construed as an agreement on Cascio's part to enter into a new lease, if required to do so by plaintiff on the happening of the contingency, as contended for by plaintiff; the words used, and the phraseology employed are clear and explicit, and are susceptible of but one meaning: Stafford Pub. Co. v. Stetson, 41 Pa. Superior Ct. 560; Wright v. Gas Co., 2 Pa. Superior Ct. 219; Harding v. Seeley, 148 Pa. 20.

If the covenant, by any possibility, could be held to be ambiguous and susceptible of another construction as contended for by plaintiff, the acts of the parties and their course of dealing under it, make it impossible to conclude that they intended it to be a covenant for a new lease.

In construing the meaning of an ambiguous contract, the courts consider the attending circumstances at the time the contract was made, and also the interpretation put on it by the parties themselves, as evidenced by their course of dealing under it: Thatcher v. Ry., 35 Pa. Superior Ct. 615; McKeever v. Coal Co., 219 Pa. 234; Sternbergh v. Brock, 225 Pa. 279; Keiser v. Real Estate Co., 43 Pa. Superior Ct. 130; Fee v. Emporium Lumber Co., 50 Pa. Superior Ct. 557.

A declaration of a landlord that his tenant had given up his lease, the mere removal of a tenant, the taking of the key, making repairs, attempts to rent the premises to others, the surrender of demised premises to the lessor

without an acceptance thereof by him, and other acts and conduct not amounting to a contract, do not destroy the privity of contract of an existing lease between the landlord and his tenant: Breuckmann v. Twibill, 89 Pa. 58; Milling v. Becker, 96 Pa. 182; Auer v. Penn, 99 Pa. 370; Teller v. Boyle, 132 Pa. 56.

The fact that a lease is for a longer period than three years, does not prevent a rescission thereof by agreement of the parties: Auer v. Penn, 92 Pa. 444.

The consent of plaintiff to the transfer of this lease in this manner did not restrict further transfer or alienation of the lease by Cascio, after he should become the transferee of the lease; he was not bound by the personal covenant on the part of the Hustons, because there was no privity of contract existing between Cascio and plaintiff, and the lease became freely alienable in Cascio's hands; he was not a party to the lease from plaintiff to Hustons: Lowry v. Coal Co., 272 Pa. 19, 21; Stewart v. Jackson, 181 Pa. 549; Girard Trust Co. v. Cosgrove, 270 Pa. 570.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1927:

Plaintiff, Charles C. Shafer, landlord of certain improved real estate in Somerset, Pa., served notice, under the Act of March 31, 1905, P. L. 87, upon Matt Cascio, to vacate and deliver up possession of the premises within 30 days, "to wit, on or before the first day of November, 1924." The property not being surrendered, plaintiff commenced a proceeding under the Act of December 14, 1863, P. L. (1864) 1125, before a justice of the peace,—these proceedings, as indicated by the present record, being entitled "Chas. C. Shafer v. Matt Cascio." The justice rendered judgment for plaintiff, and on this judgment he recovered and still holds possession of the premises in controversy. "Adam G. Berkebile, assignee of Matt Cascio, lessor of the Shafer Block," and the party in actual possession when the justice rendered his

judgment, appealed to the Common Pleas of Somerset County, which tribunal reversed the justice and entered judgment for Berkebile, on a directed verdict against plaintiff; the latter thereupon filed the instant appeal.

As we shall show, this is peculiarly a case for the exercise of our broad powers under section 1 of the Act of June 16, 1836, P. L. (1835-6) 784, which authorizes us "to examine and correct all, and all manner of, errors of the justices, magistrates and courts of this Commonwealth," and "to reverse, modify or affirm" their "judgments and decrees or proceedings." Under this statute, and practically the same language in section 13 of the Act of May 22, 1722, 1 Sm. Laws 131, 140, as construed in Com. v. Beaumont, 4 Rawle 366, 367, on appeal, the Supreme Court may inquire into "the proceedings of all inferior tribunals, as regards their regularity and legality," and that we shall do in the present instance.

Plaintiff's statement of claim in the court below names Matt Cascio as defendant and Adam G. Berkebile as the "alleged assignee of the said Matt Cascio," and contains the following averments: That he, the plaintiff, owns the property in controversy; that the "defendant, [Cascio], by himself and his alleged assignee," had unjustly held possession thereof; that, prior to June 1, 1921, plaintiff had entered into a verbal agreement with Cascio (hereinafter referred to as an oral lease, or as the new oral lease), demising the premises to the latter "by the month and for an indeterminate term," at a named monthly rental; that, on September 1, 1922, another verbal agreement was entered into between them, raising the rental; that Cascio held possession of the property until September 30, 1924, when plaintiff caused the aforesaid notice to quit to be served on him; that "said defendant, notwithstanding the notice,......refused to deliver up possession of the said demised premises and continued to occupy the same.......by himself and his alleged assignee......until the bringing of this action [before a justice of the peace, wherein]......said

premises were recovered,......[and] from which decision Adam G. Berkebile appealed [to the court below]."

When the case later came to trial, it developed, through plaintiff's testimony and upon his cross-examination, that the premises in question were originally leased on July 19, 1919, by plaintiff to Jennie B. Huston and Samuel B. Huston, for the term of 10 years from August 1, 1919; that this lease contained a clause as follows: "The premises are not to be underlet......or this lease transferred without lessor's consent, under penalty of instant forfeiture and right of reëntry for such breach." It further developed in the same way that, in March, 1920, through contract of lease from the Hustons to Cascio and also signed by the present plaintiff, the Hustons let part of the premises, with the consent of Shafer, to Cascio, for a term of three years beginning April 1, 1920, "with the privilege of renewing for five years additional." This latter contract named the Hustons as "lessors" and contained a clause as follows: "If lessors are dispossessed or make default in their lease, lessee [Cascio] agrees to take over their said lease provided same occurs during the term of this lease."

Plaintiff testified that the Hustons "defaulted in their lease"; that, in October and November, 1920, he was obliged to distrain against them for rent; that, "after the Hustons defaulted, Mr. Cascio became the tenant of the entire building"; that he paid the rent thereof for the month of December, 1920, and continued so to pay up to the time of the proceedings before the justice of the peace. These facts indicate that Cascio "took over" the Huston lease.

Plaintiff's contention that the Hustons were not in possession up to December first and that Cascio did not succeed to their possession, can have no force as against the facts themselves, appearing on this record. There was no evidence of a surrender by the Hustons. True,

after the Huston default and before Cascio took over the whole building, plaintiff collected rents from certain subtenants, but this must be assumed to have been done in relief of the Hustons, for the distraint against them in November could have been made only on the theory that they were still in possession at that time; again, the payment of the December rent for the entire building by Cascio shows,—in the absence of sufficient proof of an agreement for any other possession,—that he succeeded to the Huston possession. Thus, if the clause in the contract of March, 1920,—as to Cascio taking over the Huston lease in case of their default,—be viewed as inserted for the landlord's benefit alone, the evidence on the present record supports only one finding, namely, that plaintiff, the landlord, had permitted Cascio to take over the lease; on the other hand, if the clause in question be viewed as a mutual one, then, whether or not there was a surrender to the landlord by the Hustons, Cascio's right under the written agreement could not be affected thereby: Hessel v. Johnson, 129 Pa. 173, 177. On the facts so far detailed, it is plain that Cascio must be viewed as a substituted tenant under the Huston lease.

Plaintiff claims, however, that, after the Huston default, and the levy because thereof, he prepared "a verbatim copy of the Hustons' lease," containing Cascio's name as lessee, and took this to the latter for the purpose of obtaining his signature to it, but that Cascio refused to sign. He then said to Cascio, "Let it be understood between us here that......you are a tenant at will, and I can put you out any time I want to put you out," and Cascio said in reply, "I no sign it......it is all right.......I pay you the lease." This was told at greater length in the testimony, but the above-quoted matter covers in substance all that was said at the time in question, which plaintiff claims constituted the new, oral, lease.

Under our statute of frauds (Act of March 21, 1772, 1 Sm. Laws 389), an express surrender of the Huston lease by Cascio would have to be in writing. There was no such writing, nor was there an actual physical surrender of the premises by Cascio. Whether the making of the alleged new oral lease, had it been proved, could have been viewed as a surrender by operation of law, and therefore not within the statute of frauds (see Whitley v. Gough, 2 Dyer 140b, 73 Eng. Reprint 306; Schieffelin v. Carpenter, 15 Wend. (N. Y.) 400, 405; Coe v. Hobby, 72 N. Y. 141, 147; Smith v. Kerr, 33 Hun (N. Y.) 567, 572; Nachbour v. Wiener, 34 Ill. App. 237, 243; Evans v. McKanna, 89 Iowa 362, 56 N. W. 527, 528; Wood, Stat. of Frauds, sections 66, 68; Reed, Stat. of Frauds, section 785), it is unnecessary to decide, since there was not evidence sufficient for submission to the jury that such oral lease was made.

Cascio's replies to plaintiff's declaration as to the creation of a new term, were more in the nature of a refusal than otherwise; therefore plaintiff's evidence on this point was legally insufficient to show that Cascio had surrendered whatever rights he had under the Huston lease and had taken the property from month to month, as alleged in plaintiff's statement of claim. This being the case, we need not consider collateral evidence of incidents from which plaintiff would have inferences drawn to corroborate his contention as to the existence of a legally created agreement for a new term, except to say that, plaintiff having undertaken, as a direct witness for himself, to prove an alleged oral lease, as superseding the original written lease, and, having failed to state facts sufficient to take the case to the jury on that issue, he could not, by such inferential evidence, relieve the situation thus created, nor could he send the case to the jury by stating his construction of the net result of the conversation between him and Cascio concerning the alleged oral lease, as he in fact attempted to do at several stages in his testimony. To

substitute an oral lease for a written one protected by the statute of frauds, requires clear evidence,—if not clear, precise, and indubitable evidence; otherwise the statute would be vain indeed. Here the evidence in point, instead of clearly sustaining plaintiff's position, was properly susceptible of the opposite construction.

We agree with the court below that when the Hustons defaulted in their lease and Cascio was allowed by plaintiff to take possession of the entire property, paying the rent therefor, he was, by virtue of the contract of March, 1920, and all the facts in the case, in the position of a substituted lessee under the terms of the original demise to the Hustons, and possessed of the term named in that lease. Furthermore, there being no evidence sufficient to prove a new demise to Cascio, and nothing in the case to show either a physical "surrender of the premises or surrender of the [Huston] lease" by Cascio, and his term, as substituted tenant under that instrument, being for more than three years, again we agree with the court below that, under the statute of frauds and the decisions construing it, the testimony relied on by plaintiff to show that, despite the documentary contract to the contrary, Cascio was only a tenant at will, "cannot be permitted to prevail over the lease in writing."

Here we have the case of a substituted tenant entitled to possession under the original written lease, for a term of more than three years; a futile attempt to show its cancellation by the making of a new oral lease creating a term from month to month; a notice to quit, under the Act of 1905, based on the assumption of the existence of a tenancy at will or from month to month; a proceeding before a justice of the peace on this basis, and judgment in the landlord's favor, appealed to the common pleas by Berkebile,—one who was in actual possession, claiming to be the transferee of the substituted tenant; a reversal by the court below on the ground that the term of the written lease still continued and Berke-

bile was a lawful transferee thereof from the substituted tenant, Cascio,—therefore the justice erred in deciding for plaintiff. To this point, with the exception of the holding as to the lawfulness of Berkebile's possession as transferee of Cascio, the court below was undoubtedly correct; but the question is, whether that tribunal was right in entering a possessory judgment for Berkebile, on the theory that he was the lawful assignee, from Cascio, of the Huston lease and of the latter's unexpired · term thereunder. If that question is answered in the negative, and it should be held that Berkebile was not a lawful transferee, then the question arises, Did the justice, in the first instance, and subsequently the court below on appeal, have jurisdiction of the case? If not, what are the results on this appeal?

Plaintiff contends that, even if his argument that the written lease had been superseded should not prevail, and it should be held that the lease continued, he is nevertheless entitled to judgment, because the instrument in question contained the clause hereinbefore quoted, forbidding its transfer without lessor's consent, "under penalty of instant forfeiture and right of reëntry for such breach," and Cascio, by transferring to Berkebile, had incurred the penalty thus agreed on. As to this, the court below decided that the transfer from Cascio to Berkebile was no breach of the clause in question because "the covenant by the Hustons not to transfer [their lease] without approval in writing by plaintiff, was a personal one [which] did......not bind the subsequent assignee," citing Lowry v. Atlantic Coal Co., 272 Pa. 19, 21, 22. To this we cannot agree. The present case differs from the Lowry case in that Cascio was not "an assignee" of the Huston lease in the proper sense of that term; he acquired no rights to that lease from the lessees named therein, but rather by reason of their default and abandonment of the premises. According to the terms of the contract of March, 1920, between plaintiff, the Hustons and Cascio, on the Hus-

tons' default Cascio was to "take over their said lease"; and, when he took it over, he held directly from plaintiff, the original lessor, and was bound by the terms of that instrument, including the clause against transfer without plaintiff's consent.

The agreement against transfer is not in the same category with warrants to confess judgment, discussed in Stewart v. Jackson, 181 Pa. 549; Ahern v. Standard Realty Co., 267 Pa. 404, and Girard Trust Co. v. Cosgrove, 270 Pa. 570, relied on by appellee. Such warrants are purely personal and bind only those who sign them; they are in a class by themselves, and do not bind others who may take over leases containing them, unless there is an express written stipulation, signed by the transferee of the lease, which in effect renews the warrant as against him. Moreover, in the particular lease under discussion, there are two clauses giving a warrant to confess judgment, both of which read, "The lessee hereby authorizes," etc. On the other hand, the clause against transfers does not use that form, but employs these words, "The premises are not to be underlet, or this lease transferred without lessor's consent, under penalty," etc. This is some indication of a desire to cast the clause in question in the form of a general covenant, binding those who might, at any time, occupy the position of lessees, rather than a purely personal covenant, binding the original lessee alone. As said before, this clause, with the other general clauses in the lease of the Hustons, was binding on Cascio when, by virtue of the former's default and the contract of 1920, he went into possession of the whole premises under that lease; therefore, he would have no right to transfer the lease to Berkebile without plaintiff's consent, and the court below erred in deciding otherwise.

The conclusion just reached does not mean, however, that, even should we reverse the possessory judgment entered by the court below for Berkebile, the judgment for plaintiff, entered by the justice, should be affirmed.

We can adjudge only the case brought before the justice of the peace, and there can be no recovery on a cause of action not within the jurisdiction of the justice under the statutes invoked by plaintiff. Here, as the record shows, the case pleaded by plaintiff was not established and the case which he would substitute, to sustain the justice's judgment in his favor, was neither pleaded by him nor was it within the jurisdiction of the justice.

In the first place, the proceeding before the justice of the peace was, so far as the present record indicates, against Cascio alone; while the proceeding in the common pleas was against Cascio and Berkebile. In Stehley v. Harp, 5 S. & R. 544, this court reversed a judgment, entered by the common pleas on an appeal from a justice of the peace, where, in the original suit, there was only one plaintiff, but at the trial in the common pleas, there were two holding to the general principle, stated in the syllabus of that case, "It is error if, on appeal from a magistrate, the cause tried is different from that in which the appeal is entered." But we shall not stand on this last-mentioned decision, because in the present case Berkebile, whether or not originally named as a defendant, appears to have been accepted by plaintiff as his opponent; though this fact in itself will not give jurisdiction, since jurisdiction over the substance of the case did not exist.

We shall treat the case before us in its substance, and look at the original proceeding as though it had been instituted against both Cascio and Berkebile. Thus viewing the record, there is an actual departure from the substance of the case brought in the justice's court. In Linton v. Vogel, 98 Pa. 457, 459, this court said, "While it is true, in a certain sense, that, on appeal from a judgment from a justice, the proceedings are de novo, it is well settled that the cause of action cannot be changed" (see also Knappenberger v. Roth, 153 Pa. 614, 617); and, certainly, the jurisdiction of the common pleas cannot be based on such a departure. Not only is this

attempted here, but the departure, if allowed, shows a case which, on the facts relied upon, is without the jurisdiction of the justice, and, therefore, of the court below. The cause of action in the case at bar is plainly shown by plaintiff's statement of claim (from which we have quoted very fully) to be founded upon the allegation that Cascio was a tenant at will, or from month to month, who did not hold under a written lease, and upon the notice to quit, served on him. There is nothing in the statement of claim to indicate that plaintiff based his cause of action, as he now attempts to do, on the transfer from Cascio to Berkebile, as a breach of the Huston lease, giving rise to a right of immediate reëntry. The transfer did not take place until seven days after the notice to quit was served on Cascio, and this fact,—since the procedure adopted by plaintiff depended on statutes requiring a notice to quit,—makes it evident the transfer was no part of the cause of action relied on by plaintiff in the justice's court. Furthermore, had plaintiff based his cause of action on rights accruing to him because of the transfer from Cascio in Berkebile, the case would not have been within the jurisdiction of the justice under the acts invoked by plaintiff; and, therefore, it would not have been within the jurisdiction of the court of common pleas on appeal from the judgment of the justice. "If the justice had not jurisdiction, the common pleas cannot have it on appeal": Moreland Township v. Gordner, 109 Pa. 116, 117; see also Katch v. Benton Coal Co., 19 Pa. Superior Ct. 476, 479; Birkhead v. Ward, 35 Pa. Superior Ct. 235, 239, 241.

Both the Acts of 1863 and 1905, under which the jurisdiction of the justice of the peace was invoked, call for notices to quit before institution of the proceedings thereby afforded; they contemplate only cases where such notices are both required and given prior to the termination of a tenancy, and, as to the Act of 1863, this is expressly so ruled in Rich v. Keyser, 54 Pa. 86, 89, 90. Neither of these statutes covers a case based on a right

of immediate reëntry for breach of covenant, like the case plaintiff now attempts to assert. We say that plaintiff attempts to assert such a case, for, treating Berkebile as the defendant, the suit against him is founded on the assertion that, since Cascio, by the assignment to Berkebile, had breached the covenant forbidding transfers of the Huston lease, that assignment was void; hence Berkebile was not and never has been a tenant. This is not only a plain departure from the case pleaded in the justice's court, but that court had no jurisdiction of a cause of action based on any such state of facts. As said by us in Koontz v. Hammond, 62 Pa. 177, 182, in speaking of the Act of 1863, "The foundation of the jurisdiction [of the justice] was the existence of a tenancy; it was necessary for plaintiff to show that defendant was her tenant......, otherwise no exhibition of title or right of possession in her, however incontrovertible, would have authorized a verdict in her favor."

Had plaintiff instituted against Cascio an appropriate proceeding, in the proper tribunal, to enforce his right of reëntry because of Cascio's alleged breach of the provision against transfer of the lease under which he held, and had a judgment been secured against Cascio on this basis, then the latter and all those claiming under him, including Berkebile, might properly have been ousted from possession. Again, after Cascio turned over possession to Berkebile, plaintiff might have proceeded by ejectment directly against the latter; and if Berkebile had then pleaded his alleged right, as an assignee of the Huston lease, to possession of the demised premises, the question of forfeiture and right of reëntry, which plaintiff now seeks to bring into this controversy, would have arisen. But on the pleadings and proofs before us, these questions cannot be made to control the case; for, as already shown, they were not present in the justice's court, and, if they had been, the justice would have had no jurisdiction under the statutes invoked by plaintiff. We conclude that, since neither the justice of the peace

nor the court below on appeal had jurisdiction of the case as presented, the proper course for the latter tribunal would have been to order the dismissal of the whole proceeding, instead of either affirming the judgment of the justice for plaintiff or entering judgment for Berkebile.

Dismissal of the proceedings on the theory just stated means, of course, the setting aside of the judgment of the court below for Berkebile, but it means also a like fate for the judgment of the justice in favor of plaintiff, under which Berkebile was dispossessed; and, ordinarily, when a judgment under which possession has been obtained is disturbed on appeal, the dispossessed party may have a writ of restitution. Such a writ, however, is not always of right; for instance, in Alden v. Lee, 1 Yeates 159, 160, 207, 208, a possessory proceeding, judgment in favor of the landlord was reversed by us because he had not pursued "the proper forms pointed out by the course of the common law"; but, notwithstanding the fact that the proceedings wherein the landlord had obtained possession were set aside, this court refused to grant a writ of restitution, saying that, under all the circumstances, the defendant was not entitled to the writ and, in the exercise of our discretion, it would not be awarded. In McGee v. Fessler, 1 Pa. 126, 131, we said that, while, on the reversal of a judgment in the landlord's favor, a court of review ordinarily should award restitution, yet such a writ may be refused under special circumstances, and when it is manifest that "the landlord is entitled to possession, it would be worse than useless to turn [him] out and put him to the trouble of another proceeding which must necessarily result in the eviction of the tenant." In Hohly v. Germ. Ref. Soc., 2 Pa. 293, 294, while we reversed a judgment in favor of the landlord, under which he had recovered possession, our final order was "proceedings quashed, but no writ of restitution awarded." Again, in Hutchinson v. Potter, 11 Pa. 472, 473, a proceeding instituted before

two aldermen to recover possession of real estate, wherein a writ of possession was granted in favor of the landlord, on appeal we reversed the court below stating, "We are constrained to quash the proceedings but will not award restitution." Finally, in Hoffman v. Hafner, 211 Pa. 10, 12, we ordered restitution, saying that this relief should be granted "unless there is something peculiar in the case," but that, under exceptional circumstances, like those shown by the cases already mentioned, a judgment may be reversed and the proceedings set aside without the award of such a writ. The case now before us is like some of those above cited, where the court of first instance had jurisdiction, so far as the right to bring a possessory action therein was concerned, but subsequent developments demonstrated a lack of jurisdiction to enter the judgment appealed from, and where the equities of the situation were against the one asking for the writ of restitution; the latter is the position occupied by Berkebile, and in our judgment he is not entitled to such a writ. As hereinbefore stated, on the facts proved the assignment of the lease by Cascio to Berkebile worked a forfeiture of the former's term. Under such circumstances, plaintiff might have entered and resumed possession of the premises without any process of law, provided he could have done so with no breach of the peace (Overdeer v. Lewis, 1 W. & S. 90, 91; Kellam v. Janson, 17 Pa. 467, 469; Rich v. Keyser, 54 Pa. 86, 88; Leidy v. Proctor, 97 Pa. 486, 490, 491; Sweeney v. McDonnell, 25 Pa. Superior Ct. 69, 71); or he could, by proper proceedings, have had the aid of legal process to restore him to possession. To oust him, then, by a writ of restitution in this proceeding would be useless, to say the least, since, so far as the record before us indicates, he could immediately recover in ejectment.

It is possible that in ejectment other evidence than that here appearing might be produced,—as, for instance, consent by plaintiff to the assignment,—which

would give Berkebile the privilege of possession, and whatever we may decide here cannot prejudice his right to produce evidence of that kind in a proceeding where it may be relevant; but the fact that other proofs may be available at another time, can have no bearing on this case, where the evidence before' us plainly indicates a forfeiture to plaintiff of the very lease under which Berkebile claims to hold the property in controversy.

Another point to be considered is this: The court below not only entered a possessory judgment for Berkebile, but also included therein substantial damages, to cover the value of the term of which he had been dispossessed; whereas, on the evidence here produced, Berkebile's claim of possession, not being rightful, could have no real value. It is unnecessary to discuss this point, however, because the case should have been dismissed for want of facts to bring it within the jurisdiction conferred by the acts invoked. For the reasons given, we shall not enter judgment for plaintiff; no more shall we affirm the monetary or possessory judgment of the court below in favor of Berkebile, though, as we shall explain in the next paragraph, the latter is entitled to a judgment for costs.

There is no way of telling from the present record what evidence was produced before the justice of the peace, so we have assumed it was the same as given in the common pleas; but, on the proofs there adduced, plaintiff himself showed a case not within the jurisdiction of the justice under the acts invoked for that purpose. This being the case, the justice, in the first instance, instead of entering judgment for plaintiff, should have dismissed the proceedings, and, on his failure so to do, the court below should have pursued that course and dismissed the proceedings ab initio, but without a writ of restitution. Since, however, plaintiff's statement of claim pleaded a cause of action within the jurisdiction of the justice and the court below, on which issue was joined in the latter tribunal by Berkebile, as defendant,

and, since plaintiff failed to prove the case thus pleaded, his accepted opponent is entitled to a judgment for costs. In other words, although accepted by plaintiff as his opponent, Berkebile could not have successfully demurred to plaintiff's case as originally averred by him; hence he had to answer, and, being obliged to answer, he is entitled to costs.

The judgment in favor of Adam G. Berkebile is affirmed for costs only; aside from this limited affirmance, the judgment for him in the court below and that entered by the justice of the peace in favor of plaintiff are both set aside and the whole proceeding dismissed ab initio.