## Dougherty *v.* Hebble, Appellant.

478

Argued May 25, 1932. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*F. Lyman Windolph,* of *Windolph & Mueller,* with him *Edwin M. Gilbert,* for appellant.—It was error to admit evidence tending to show that defendant was in arrears in his rent.

It is to be observed that the Act of 1863 is concerned only with proceedings on the part of the landlord to recover possession of leased premises upon the determination of the lease, and not upon nonpayment of rent by the tenant in possession: Yoder v. Swainbank, 82 Pa. Superior Ct. 568; Shafer v. Cascio, 288 Pa. 56.

It was error to submit to the jury the question of whether defendant was a tenant at will or a tenant for years: White v. Long, 289 Pa. 525; Kaufmann v. Liggett, 209 Pa. 87; Shafer v. Cascio, 288 Pa. 56; Ruffner v. Wolfe, 14 Pa. Superior Ct. 513.

*Guy K. Bard,* of *Bard & Brown,* for appellee.—It was proper for the court to leave to the jury the question of fact as to whether the defendant was in the possession of the premises under the written lease on August 4, 1926, or whether that lease had terminated and another oral lease was in effect: Quinn v. McCarty, 81 Pa. 475; Yoder v. Swainbank, 82 Pa. Superior Ct., 568.

OPINION BY MR. JUSTICE MAXEY, June 30, 1932:

This was a proceeding by a landlord to recover possession of certain demised premises from his tenant at the expiration of the term, under the Act of December 14, 1863, P. L. (1864) 1125, section 1, (68 P. S., section 364). After hearing, the magistrate rendered judgment for the plaintiff. Defendant was then forcibly dispossessed and plaintiff repossessed of the premises. Defendant appealed to the court of common pleas, where a trial resulted in a verdict and judgment for plaintiff. Defendant then appealed to this court.

On July 29, 1929, plaintiff made formal complaint before the magistrate setting forth that he owned and was in possession of certain premises and that, on Au-

gust 4, 1926, he made an agreement with defendant to let the premises to him until April 1, 1927, at a rental of one dollar, the lessee to make certain alterations, additions and improvements; that on April 1, 1927, a further lease was entered into for one year, at a rental of $300 a year; that this lease was extended for another year, until April 1, 1929, which term was fully ended; and that plaintiff gave defendant proper notice to quit three months prior to the expiration of the term. Defendant failed to appear in answer to this complaint and on August 3, 1929, the justice, one of the aldermen of the City of Lancaster, gave judgment for possession and for damages in favor of plaintiff. Defendant entered an appeal in the court of common pleas on August 14th, and on September 17th, defendant entered a rule on plaintiff to file a declaration within fifteen days. Subsequently plaintiff caused a warrant of possession to be issued, and forcibly ejected defendant with all of his goods and household effects on September 28, 1929. Plaintiff thereafter filed his declaration in the court of common pleas, alleging that, on April 1, 1929, he was the owner, entitled to immediate possession of the premises in suit, and alleging the other facts above stated, which led up to defendant's ouster. Defendant's affidavit of defense admitted plaintiff's title but denied that he, the defendant, was wrongfully in possession after April 1, 1929; and alleged on the contrary that he was lawfully and rightfully in possession by virtue of a written agreement between plaintiff and himself, executed on August 4, 1926, and set forth on the record as "Exhibit A." The affidavit averred that under this agreement, defendant's term had not yet expired, and that plaintiff had wrongfully ejected him, and that he, the defendant, was entitled to possession and to damages because of the unlawful ejectments. At the trial it was testified that defendant took possession of the blacksmith's shop pursuant to the agreement of August 4, 1926, converting it into a garage and restaurant, de-

fendant making the necessary alterations. On April 1, 1927, no electrical facilities as contemplated by the agreement of August 4, 1926, were available. Nevertheless, defendant continued to occupy the entire premises as provided in the lease agreement and all of the terms of this agreement were in fact complied with except that relating to the supply of electricity by a local company. However, defendant did start a private electric plant at his own expense, as was stipulated in the lease that he might do. Plaintiff resided in the portion of the dwelling assigned to him and boarded with the defendant until February 19, 1929. Some dispute arose between the parties and plaintiff decided, so he alleged, not to renew defendant's lease, and on January 1, 1929, he gave notice to vacate on April 1, 1929. Appellant's refusal to do so resulted in the ouster proceedings before the justice of the peace. Throughout the trial it was plaintiff's contention that because of failure to get electric current before April 1, 1927, the agreement of August 4, 1926, by its express terms, came to an end on that date, and that thereafter defendant was in possession only under a parol lease of indeterminate term or at most from year to year. Defendant on the other hand contended that the stipulation for the installation of electric current was an express consideration for his benefit, that he had a right to waive this, and did waive it; hence the agreement to lease remained in full force and effect and by its terms he had a right to occupy the premises until April 1, 1932. The trial judge was of the opinion that this did not present a case for the judicial construction of a written instrument, and he left it for the jury to determine from the evidence as to the course of conduct between the parties, whether the defendant had a term at will for an indeterminate period, or whether the defendant was in possession under a five year term. The jury found a general verdict for the plaintiff. Judgment was entered, a rule for a new trial was discharged, and defendant appealed.

On the trial, the agreement of August 4, 1926, was put in evidence by plaintiff, and it was likewise read to the jury by the attorney for defendant. It is expressly provided therein that the lease will end on April 1, 1927, if no electricity is secured and may then become the subject of a new lease...... The agreement may be ended at any time by mutual agreement...... The transcript of the record in the proceedings before the justice was also put in evidence in support of plaintiff's case. The complaint recites that it is made "on oath," and on April 1, 1927, "the lessor let to the said lessee the said premise for a term of one year, at a rental of $300 per year, and that the said lessor extended said lease to said lessee for said premises to April 1, 1929, reserving rent, which term is fully ended."

The declaration made in the court of common pleas was somewhat lacking in definiteness. It details the proceedings before the justice, the judgment of the justice in plaintiff's favor, the appeal of defendant, and the forcible ejectment of defendant on September 28, 1929, by virtue of a writ of possession issued pursuant to the judgment, and the damages plaintiff demands, but it does not set forth specifically the terms of the alleged parol lease relied on by plaintiff. There was no other evidence introduced to support plaintiff's theory of the tenancy. However, we are of the opinion that plaintiff sufficiently pleaded a cause of action to support the verdict in his favor, and, according to the Act of March 6, 1872, P. L. 22, section 1, proceedings under the Act of December 14, 1863, P. L. (1864) 1125, shall be founded on a written lease or contract in writing, or on a parol agreement by which the relation of landlord and tenant is established and a certain rent is reserved. Both in the proceedings before the alderman and on the appeal to the court of common pleas, plaintiff relied upon a parol lease of an indeterminate duration, or at most a term from year to year, and not upon termination of the lease of 1926 for nonpayment of rent. Therefore,

the case does not fall within the decisions of Shafer v. Cascio, 288 Pa. 56, 135 A. 639, and Linton v. Vogel, 98 Pa. 457, 459, that the cause of action cannot be changed when appeal is taken to the court of common pleas.

The principal problem in the case is whether or not the trial judge should have submitted to the jury the question as to the nature of the tenancy under which defendant had possession. The defendant-appellant urges the view that this question hinged upon the construction of the written instrument and that the duty of construction rested on the trial judge. The trial judge said as to this: "What effect, as a matter of fact, had this agreement of August 4, 1926, as acted upon and construed by the parties? If only that agreement was before the court, then it would be the duty of the court to interpret that agreement, which duty I could not escape, and it would not be for you to pass upon it. But, as I view this case, after these parties had signed this paper of August 4, 1926 (which paper, you will remember, contemplated a lease in the future on certain terms), they lived together, and then, what did they do? Did they continue under the terms of the proposed lease called for by that agreement, without making that lease, or during the whole of the time that Mr. Hebble was in Mr. Dougherty's premises, was Mr. Hebble a tenant at will or a tenant for an indeterminate term? That is a question which you will have to determine before you can say whether this eviction was just or unjust...... After the parties went there and lived together, did they adopt, without writing it out, the terms of the lease that is called for in this agreement, or did their minds fail to meet, and did they just drift along as under a tenancy at will or a tenancy for an indeterminate term? Now, a course of conduct would be evidence of what the parties meant by that course of conduct......If the defendant was a tenant at will or for an indeterminate term, and the plaintiff warned out the defendant and acted within his (the plaintiff's) rights in dispossessing the

defendant, then you may find for the plaintiff, provided, of course, you find those facts. If the defendant was neither a tenant at will nor a tenant for an indeterminate term whose term had ended, and if the defendant was justly in possession of the premises in dispute, and if the defendant was a tenant for a definite term, and if the plaintiff had acted unjustly and in violation of the defendant's rights when the plaintiff dispossessed the defendant, then you may find for the defendant."

The court would not have been justified in saying as a matter of law that the lease of August 4, 1926, had not expired. The lease itself provided that it will end on April 1, 1927, if no electricity is secured, and "may then become the subject of a new lease." No electricity had been secured on that date. It further provided "the agreement may be ended at any time by mutual agreement." Did the course of conduct of the parties toward each other support the inference that the agreement of August 4, 1926, had been terminated by mutual agreement? The court below said in its opinion discharging the rule for a new trial: "In the face of the uncertainties contained in the agreement and the dispute of fact as to what the parties had done, the court could not have given binding instructions in favor of the defendant. 'The evidence puts the case in that class in which matters of fact depending on oral testimony are connected with, and necessary to, a proper understanding of the written evidence, in which cases the court is not bound to construe a writing as though it stood alone. Illustrations of the application of the principle are found in Sidwell v. Evans, 1 P. & W. 383; McGee v. Northumberland Bank, 5 Watts 32; Home B. & L. Association v. Kilpatrick, 140 Pa. 405 [21 A. 397], and Winters v. Schmitz, 36 Pa. Superior Ct. 497. Extrinsic circumstances are sometimes so connected with a writing as to make it necessary to submit all of the evidence to the jury': Morley Auto Co. v. Pittsburgh Machine Tool Co., 54 Pa. Superior Ct. 223, pages 228, 229."

In addition to the principal question there are also some other questions to be considered in this case. In the early stages of the trial, plaintiff's counsel offered in evidence a letter dated January 3, 1929, from defendant's attorney to plaintiff requesting the latter to assist in the appointment of arbitrators pursuant to the agreement of August 4, 1926, showing that he wanted to submit all of the differences to arbitrators, to be followed by proof that they did select three arbitrators, that the arbitrators found that the defendant was indebted to the plaintiff in the sum of $16.79 for rent to April 1, 1926, and "all settlements or agreements were to follow, or to be new agreements from April 1, 1929." The attorney said further: "We want to show by this letter and corroborative evidence that they did submit every thing to the arbitrators and that they agreed that this agreement was ended." The objection of defendant's counsel was overruled, and the letter was admitted but thereafter plaintiff was not permitted to elicit the details of the arbitration, or the decision reached. Later plaintiff was permitted to prove by one of the arbitrators that a submission had been made, but not to prove what the decision of the arbitrators was. However, on defendant's cross-examination, the trial judge permitted plaintiff to inquire of defendant whether he paid any rent. Defendant replied that he paid rent up to April 1, 1929, when he had already received notice to vacate but not afterwards. Defendant was also required to state over his counsel's objection that the dispute had been submitted to arbitrators and that they found against him in a money sum, that he had repeatedly asked the arbitrators how they arrived at their decision, but none of them would tell him. Plaintiff was then allowed to recall three arbitrators to elicit testimony that the defendant had never made any such inquiry of them. It is of these rulings that appellant complains, his proposition being that his submission to arbitration on the nonpayment of rent had nothing to do with the

termination of the lease under the original agreement or under the Act of 1863.

We do not find that the evidence as to the arbitration had any bearing on this case. Plaintiff did not prove what he offered to prove, to wit: "that they agreed that this agreement [of August 4, 1926] was ended." The fact that a certain dispute had been submitted to arbitration and that the arbitrators found against the defendant "in a money sum," left the matter of the character of lease on which defendant's tenancy rested entirely upon an open question to be determined by other evidence. When during the charge defendant's counsel in reply to the court's inquiry, "Is there anything further?" suggested that the court say to the jury "that the fact that the plaintiff and the defendant continued in the demised premises after April 1, 1927, on precisely the terms set forth in the lease of August 4, 1926, that is, that the plaintiff enjoyed exactly the part of the premises set forth in that lease and the defendant exactly the part of the premises set forth in that lease, is some evidence from which the jury may infer that the right to continue the lease was exercised by the defendant?" the court appropriately replied: "That is exactly the point that I am leaving to the jury—to find what this course of conduct between the parties, plaintiff and defendant, meant, and in what it resulted. It is for you [the jury] to draw the inference from the conduct of the parties."

Some of the questions that the court permitted on cross-examination relating to the arbitration were permitted for the purpose of testing the knowledge and accuracy of the witness, and the court also allowed the plaintiff to call the arbitrators to refute certain testimony that the defendant gave. This was for the purpose of affecting his credibility. Some of these contradictions were on collateral matters, but the error committed in permitting this was not so substantial as to be reversible.

The entire case was a rather complicated one in its facts, and the trial judge submitted the questions at issue to the jury in a charge that was fair, impartial and adequate.

The judgment is affirmed.