Goldberg, Appellant, v. Grossman and Rosenau.

Argued October 16, 1931. Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, and BALDRIGE, JJ.

*Harry Shapiro,* for appellant.

*C. Brewster Rhoads,* and with him *Laurence H. Eldredge* and *Montgomery & McCracken,* for appellees.

OPINION BY BALDRIGE, J., May 4, 1932:

On December 22, 1925, the defendant's straw man, Edward Woodfield, as equitable owner, entered into an agreement to sell the premises, known as 411 Market Street, Philadelphia, for $72,000. Settlement was to be had on March 1, 1926, and possession was to be given by assignment of "present existing leases." When the agreement of sale was executed, the first floor was in possession of Philip Felderman and Louis Lerner under a lease, dated October 17, 1925, for a term of five years, which provided that the premises should not be sub-let or the lease assigned. Prior to February 17, 1926, Felderman and Lerner became insolvent and on that date, they, with the consent in writing, of the legal owner of the premises, Franklin Trust Company, administrator of the estate of J. Dreer, deceased, assigned their lease to Liberty Radio Stores, Inc., and all their right and interest in $1,000, in consideration of the sum of $1,500. The $1,000 was originally deposited by Felderman and Lerner with their lessor for the faithful performance of the covenants of the lease. The defendants tendered a deed to the plaintiff for the premises at the date of settlement, together with the lease of Felderman and Lerner assigned to Liberty Radio Stores, Inc., which the plaintiff refused to accept on the ground that defendants could not tender performance of their obligations under their agreement of sale, because of the assignment of the lease.

This action was brought to recover the $2,000 deposit money which defendants refused to return, alleging that it had been forfeited as liquidated damages. Under a stipulation between the parties, the case was submitted to the trial judge, without a jury, to determine the sole question involved, to wit: Did the defendants

offer to perform in accordance with the provisions of their agreement? The trial judge found for defendants and his conclusions were affirmed by a divided court sitting in banc.

The promise to pay the balance of the purchase money was conditioned on the defendants' carrying out their agreement. If there was a failure so to do, the plaintiff was entitled to recover, notwithstanding that the defendants' inability to fulfill the provisions of the agreement was the result of the act of the holders of the legal title. If the construction to be given this agreement is that the tender of the deed and the assignment of the lease as it existed on the date of settlement were a fulfillment of the parties' intention, then the lower court's conclusion is correct.

It will be noted that the agreement provides for the assignment of the lease, not as it existed at the time of settlement, but the ''present existing leases,'' which we construe to mean the lease with all the rights and privileges existing at the time of the agreement. No change was contemplated that would detrimentally affect the plaintiff's rights or interest. The parties seemed to have emphasized their intention that the leases should be transferred without change in any particular.

It is contended upon the part of the learned counsel for appellees that a tendering of the lease for the same term was, in fact, the identical lease and was, therefore, a fulfillment of the contract. With this proposition we cannot agree. It was certainly not the lease as it existed when the contract of sale was made. The assignment of the lease, after the agreement, deprived the appellant of the benefits of a number of the covenants of the lease, which otherwise he would have enjoyed. As Judge LEWIS points out in his dissenting opinion, the appellant would have had the right (if there had been no assignment), in view of the tenants' bankruptcy, to enter into a new lease with a tenant of

his own selection and upon such terms as he saw fit; he would have had priority to one year's rent from the assets of the lessee in any execution against him; he also would have been entitled to the $1,000 deposited as security for the faithful performance of the covenants of the lease, in the event of a breach; he would have had the right to distrain, etc., to waiver of exemption by the lessees, and to confess judgment. Furthermore, Liberty Radio Stores, Inc., the new tenant, was not bound by the covenants in the original lease that it should not be assigned without consent of the lessors: Lowry v. Atlantic Coal Co., 272 Pa. 19. The plaintiff was entitled to have the benefits of all these covenants of the lease, if he was expected to fulfill his part of the contract.

In re: Barnett, 12 Fed. (2) 73, the circuit court of appeals for New York district said, "When we speak of a lease, the term 'lease' is commonly used as including something more than the mere legal act by which a tenancy is created, and embraces what is described as 'covenants of the lease,' which creates rights in personam as distinguished from rights in rem." See Ralph v. Deiley, 293 Pa. 90, 94. In Campbell v. Jefferson, 296 Pa. 368, 375, the court stated: "...... a contract fails where the continued existence of something essential to the performance is an implied condition of the contract and such thing has ceased to exist: 5 Page on Contracts (2d ed.), page 4713. On this point we may adopt the language of Wilson v. Nolen, 200 Ky. 609, quoted in the opinion of the court below in the present case: 'Where the contract between the parties is from its very nature an executory one and contemplates future performance as to the consideration and before the time comes for that consideration to pass, unforeseen things happen which are not brought about by either of the parties involved, and it thereby becomes impossible for the contract to be performed by either party, then there has come about a state of

things not contemplated by either and which, relating back to the original transaction, destroys the original consideration or, as it is sometimes said, brings about a total failure of consideration.' ''

It is conceded that if the terms of the lease had been enlarged, or the rent reduced, the agreement of sale would be unenforceable because it was not the same lease that was contemplated to be assigned. The change of other covenants has the same legal effect. An agreement to assign, and deliver at a future date, a lease, a note, or any other chose in action, carries with it the duty to deliver the subject matter of the assignment unaltered. That should have been done in this transaction. As was said in Erie v. Vincent, 8 Watts 510, 511, "It is of no importance in what the alteration consists, provided it is attended with serious and permanent loss to the party, or ...... a diminution of certain benefits which it at first possessed." If any doubt lingers as to the intent of the parties to the agreement, it should be construed most strongly against the vendors: Medoff v. Vandersaal, 271 Pa. 169. It is true that the lessee's personal liability for the rent remains, but, as we have already stated, the other provisions in the lease were affected by the assignment, to the detriment of the plaintiff.

The appellees, in their paper book, state: "If the defendants had contracted to *sell* their particular lease to the plaintiff, then the plaintiff could argue that he was entitled to that particular lease and to the particular leases named therein;" that is, if the agreement was to sell certain premises and possession was to be given by an assignment of the lessees, then there was no violation of the terms of the contract; but if the vendors agreed not only to sell the premises but to sell also the leases, then there can be a recovery.

We do not place a different construction upon the words "sell" and "assign," as used in this contract. An assignment, or a sale, of a lease is the passing of

the owner's title to the lease. The legal effect of transferring title, whether it be termed an "assignment" or a "sale" of the lease, is the same. Bouvier, Vol. 1, page 260, defines "assignment" as "The transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein." The late Mr. Justice SADLER, in Lowry v. Atlantic Coal Company, supra, where the lease was transferred, uses the words "assign" and "sell" interchangeably. The vendee became, on the execution of the agreement, in contemplation of equity, possessed of the lease, as well as seized of the property, and was subject to any loss and entitled to enjoy any benefits that might accrue between the agreement and the conveyance: Ives v. Cress, 5 Pa. 118; Kerr v. Day, 14 Pa. 112; Spratt v. Greenfield, 279 Pa. 437; Leafgreen v. Drake's Exrs., 300 Pa. 369. If the vendors desired to reserve the right to change any covenant in the lease before settlement, they should have so stipulated.

From the foregoing, it appears that the defendants were unable to deliver to the plaintiff that which they agreed, to wit: The present existing lease, and as a result, he was deprived of a substantial value, which the owner of the property derived by the assignment after the agreement of sale.

Judgment of the lower court is reversed and is now directed to be entered for the appellant in the sum of $2,000, with interest from December 22, 1925.