Elizabethtown Lodge No. 596 *v.* Ellis, Appellant.

Argued November 13, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Morris Wolf*, with him *Ralph M. Barley, Mitchell E. Panzer, Barley, Snyder, Cooper & Mueller,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*F. Lyman Windolph,* with him *Henry F. Gingrich,* and *Windolph, Burkholder & Hartman,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 6, 1958:

This is an appeal from an order of the Court of Common Pleas of Lancaster County discharging rules to strike off and to open a judgment entered by confession in an amicable action of ejectment and granting a rule by the appellee to amend nunc pro tunc its petition for leave to enter judgment.

The material facts, which are not in dispute, are as follows: On April 16, 1940, the appellant, Edwin J. Ellis, and the appellee, lessor, Elizabethtown Lodge No. 596, Loyal Order of Moose, entered into a written lease prepared by the lessor, covering an unimproved lot in the Borough of Elizabethtown, Lancaster County,

Pennsylvania. The term of the lease was for a period of 20 years from April 1, 1940, with the right of appellant to renew the lease for two additional terms of five years each. The agreed upon rental was $50 per month during the first 20 years; $60 per month for the first renewal period of five years and $75 per month for the second renewal term. The lease was silent with respect to the place at which the rent was to be paid.

Shortly after taking possession appellant, in accordance with permission contained in the lease and the prior approval of the lessor, erected on the premises for occupancy by the American Stores Company a one-story building at a cost to appellant of $31,250. As further contemplated by the parties to the original lease, a sub-lease of the improved premises was made to the American Stores Company at a rental exceeding that payable by appellant to appellee.

In the same year, 1940, appellant assigned his interest in the lease to Jacob Ellis Realties, Inc., of which he was and is president and treasurer. The corporation in turn assigned its interest to the Central-Penn National Bank of Philadelphia as collateral security for a loan. Both assignments were approved in writing by the appellee. Thereafter the rent was paid by the bank to the appellee.

More than 16 years later, on June 21, 1956, the bank notified the appellant and appellee by letter that its interest in the lease had terminated as of June 1, 1956. As a result the obligation devolved upon appellant or upon the corporation of which he was president to see to the payment of rent directly to the lessor commencing July 1, 1956. At the time the appellant received the letter he was making preparations to go abroad and, consequently, he turned over the letter together with all other documents pertaining to the

demised premises to his secretary with specific instructions to take care of the matter until his return.

On July 20, 1956, he departed for Europe as planned and did not return to the United States until September 14, 1956. As previously indicated, from 1940 until July, 1956 the rent had been paid faithfully every month by the bank. However, the three monthly payments due between the time appellant turned the matter over to his secretary until his return from Europe, namely, July, August and September, were not paid. During these three months the lessor appellee made no demand for the payment of rent on either the appellant or Jacob Ellis Realties, Inc., but on July 31, 1956, Charles B. Sweigert, who was then Governor of the Lodge, called upon the local manager of the American Stores Company and notified him that the rent was in default and informed him to relay this information to the district manager of American Stores to see what was actually transpiring.

With no further communication to American Stores and with no notification at all to appellant or his company, the lessor, on September 14, 1956, the day appellant returned from Europe, under a power contained in the lease, caused a dual judgment to be entered as by confession (1) for $150 arrearages of rent and (2) in ejectment for possession of the property.

Inasmuch as the warrant of attorney to enter judgment was over 10 years but less than 20 years old, a local rule of court[1] required leave of the court, which was granted and the judgments entered the same day.

---

[1] Rule 34, Section I, of the Rules of Court of Lancaster County, provides: "If a warrant of attorney to enter a judgment is more than ten years old and under twenty years old, the Court or Judge thereof in Chambers must be moved for leave to enter said judgment,

Appellant first learned of these proceedings indirectly in the latter part of September, whereupon he immediately telephoned counsel for the lessor and offered to send a check for accrued rent with interest. Counsel for the Lodge informed appellant it was then too late to pay the rent and followed this conversation with a letter informing appellant that the Lodge had decided to insist upon a forfeiture in spite of the tender. He stated further that the Lodge would be willing to execute a new lease at an increased rental based upon the present rental value of the premises or settle the action by requiring payment of a substantial sum to reinstate the original lease. The letter concluded by stating unless a substantial offer was made the Lodge would negotiate a new lease directly with the appellant's subtenant.

On October 23, 1956, appellant, through his attorney, made a formal tender of the arrears of rent with interest. This tender together with all subsequent tenders up to the time of argument on the rules was refused by the lessor. Thereafter, on October 26, 1956, appellant filed separate petitions to strike off and to open these judgments. The petition for a rule to strike off the judgments was predicated upon the lessor's failure to comply with the rule of court previously alluded to in that neither appellee's original petition nor its affidavit contained any averment that the rent was unpaid and, secondly, that the judgment was entered without averment or proof of demand for rent by appellee. The first defect of record was subsequently cleared by the court's grant of appellee's motion to amend.

We deem it unnecessary to consider the propriety of the court's action in allowing the amendment nunc

---

which motion must be grounded on an affidavit that the money is unpaid . . ."

pro tunc or the court's refusal to open the judgment because of the unconscionableness of the lessor's action, for we are of the opinion that the rule to strike off the judgment should have been made absolute by reason of the appellee's failure to aver or prove a demand for rent.

In Pennsylvania we have consistently followed the strict common law rule that unless a demand for rent is expressly waived by the terms of a lease a demand by the lessor is absolutely essential to work a forfeiture thereof for nonpayment of rent. As stated in *McCormick v. Connell,* 6 S. & R. 151, 152, 153, "Where there is a condition of re-entry on nonpayment of rent, several things are required by the common law, to be previously done, to entitle the reversioner to re-enter. *There must be a demand of the precise rent due, on the very day on which it becomes due,* on the most notorious place on the land, and a demand must in fact be made on the land, although there should be no person on the land ready to pay it: Duppa v. Mayo, 1 Saund. 287, note 16. This part of the common law has been adopted by us; in our own common law; Stoever v. Lessee of Whitman, 6 Binn. 419. It may have its inconveniences; it may be said, that the demand, where there is none on whom the demand can be made, is an idle ceremony. This may be very true; we may not, at this day, be able to discover the reason of all this exactness, but it is a principle of our legal tenures, and can only be changed by the Legislature." (Emphasis supplied). See also *Rea v. Eagle Transfer Company,* 201 Pa. 273, 50 A. 764; *Bergdoll v. A. G. Spalding & Brothers, Incorporated,* 234 Pa. 588, 83 A. 427; *Thomas et al. v. Boyle,* 265 Pa. 487, 109 A. 232; *Shapiro et al. v. Malarkey,* 278 Pa. 78, 122 A. 341; *Cleveland et al. v. Salwen et al.,* 292 Pa. 427, 141 A. 155.

In the instant case appellee admits no demand for payment of the rent was made on the due date but contends that a demand was unnecessary because the lease between the parties provided for a waiver of demand. In support of its contention appellee relies upon the following paragraphs of the lease:

"(9) Should Lessee break or evade or attempt to break or evade any of the terms, conditions or provisions herein set forth, then the entire rent for the full term of this lease, or of a renewal thereof, shall become due and payable at once and may forthwith be collected by distress or otherwise. If default shall be made by Lessee in the payment of any part of said rental to Lessor for thirty (30) days after the same becomes due or if Lessee shall break or evade or attempt to break or evade any of the terms, conditions or provisions herein set forth, Lessor may forfeit and annul the unexpired portion of this Lease, or of a renewal thereof, and enter upon and repossess demised premises, without process of law and without any notice whatsoever. . . .

"(11) Lessee hereby waives the usual three (3) months' notice to quit and agrees to surrender demised premises at the expiration of the said term, or on the termination of this Lease, or of a renewal thereof, without any notice whatsoever, and Lessee also waives the benefit of all appraisement, stay or exemption laws, the right of inquisition on real estate and all bankrupt or insolvent laws now in force or which may hereafter be passed, upon any proceeding instituted for the recovery of said rent, either by distress or otherwise. . . .

"(13) Lessee hereby confesses judgment in favor of Lessor for the whole amount of the rent at any time remaining unpaid, whether the same shall have become due or not, waiving stay of execution, inquisition and

all exemption laws now in force or which may hereafter be passed, and hereby authorizes the adding of ten per cent. (10%) attorney's commissions for collection; and Lessee hereby, upon the breach of any of the terms, conditions and provisions of this Lease, authorizes any attorney of any Court of Record to appear for him and enter an amicable action of ejectment and confess a judgment of ejectment therein for demised premises, and Lessee hereby authorizes the immediate issuing of a writ of habere facias possessionem with clauses of fieri facias for costs, without asking leave of Court."

We agree with the appellee that while the present action was instituted pursuant to paragraph 13 of the lease, nevertheless, the three paragraphs must be construed together in ascertaining the intention of the parties. However, we do not agree that the language "without any notice whatsoever" as used in paragraphs (9) and (11) is the equivalent of a waiver of demand. It is only in cases in which the contract of lease contains an express waiver of demand that the common law rule can be disregarded: See 32 Am. Jur., Landlord & Tenant, §855, §856.

The appellee must in this action be bound by a strict construction of the terms of the lease on the well settled doctrine that forfeitures are odious and must be strictly construed: *Homet v. Singer*, 35 Pa. Superior Ct. 491; *Wick v. Bredin*, 189 Pa. 83, 42 A. 17; *Westmoreland, etc. N. Gas Co. v. Ira DeWitt et al.*, 130 Pa. 235, 18 A. 724. Construed in this light we think it clear that the words in controversy have reference solely to the customary notice to quit which a landlord must provide his tenant if he intends to exercise his right of repossession for breach of one of the terms of the lease. In paragraph (9) of the lease the words are used in conjunction with the lessor's

right to enter and repossess the demised premises. Paragraph (11), which is the only provision in the lease containing express waivers, specifically states in relevant part "Lessee hereby waives the usual three (3) months' notice to quit and agrees to surrender demised premises . . . on the termination of this Lease . . . without any notice whatsoever . . ."

A demand for payment and notice to quit cannot be equated for they are two entirely different steps that a landlord must pursue before declaring a forfeiture of a lease. The purpose of the former is to afford the tenant a reasonable opportunity to make payment while the purpose of the latter is to give the tenant time to prepare for eviction once he has failed to respect the demand and further to evidence the fact that the landlord is exercising his option to repossess the premises. It is for this reason that under the common law rule demand must be made on the rent day whereas notice can be given several weeks after the lessee's failure to honor the demand. This distinction is clearly recognized in the case of *Rea v. Eagle Transfer Company*, supra. In that case the lease provided for re-entry by the landlord upon default after giving 10 days notice. Despite the fact that notice was given within the prescribed time, nevertheless, we held that there could be no forfeiture in the absence of a common law demand. The distinction between notice to quit and demand for payment is further evidenced by the recent Landlord and Tenant Act (Act of April 6, 1951, P. L. 69, 68 PS §250.501), which requires a landlord seeking possession to give notice to remove after the failure of the tenant upon demand to pay the overdue rent.

Because of this well recognized distinction in Pennsylvania we are in accord with the reasoning of the Supreme Court of Iowa in the case of *Cole v. Johnson,*

120 Iowa 667, 94 N.W. 1113, 1114, where in a similar factual situation the Court said: ". . . we are of the opinion that a demand should be made, and some reasonable opportunity to make payment afforded the tenant, before employing a summary remedy for his ejection. It is a familiar principle that forfeitures are not favored in law, and their effect will be limited by strict construction of statutes and contracts. There is no hardship in this requirement, and there may be great hardship in enforcing a technical forfeiture, which a simple demand might have rendered unnecessary. The rule is salutary and humane, and accords with the general policy of the law. . . ."

Finally, if there were any doubt as to the meaning of the language or if it might be susceptible to the interpretation placed upon it by appellee, the general rule of construction that an ambiguous lease must be construed most strongly against the landlord and in favor of the tenant would be peculiarly applicable here inasmuch as the lease was prepared by the lessor appellee.

The order is reversed and the record is remanded to the court below for further proceedings in accordance with this opinion; costs to be paid by appellee.