## B. C. & H. Corporation v. Acme Markets, Inc.

420

C. *Gregory Frantz* and *James O. Courtney, Jr.,* for plaintiff.
*Daniel W. Rullo,* for defendant.

COFFROTH, *P.J.*, July 10, 1980—This action in ejectment is before the court on defendant's motion for summary judgment. The issue is whether plaintiff lessor (hereinafter called landlord) has validly terminated its lease with defendant lessee, Acme Markets, Inc. (hereinafter called tenant), for either of the following actions by tenant:

(1) Assigning the lease without landlord's consent, or

(2) permitting alteration of the leased premises by its sublessee.

Defendant tenant's motion for summary judgment is based on the undenied averments of the pleadings and affidavits filed.

From the pleadings and affidavits, we find that the following are the undisputed

## FACTS

Plaintiff landlord, owner of the real estate in suit, leased the same to defendant tenant by written lease agreement dated February 16, 1967 for a preliminary construction term, an initial term thereafter of 15 years beginning July 1, 1967 and ending June 30, 1982 and six additional renewal terms of five years each. During the preliminary term, landlord constructed a supermarket building and parking lot on the land described in the lease; also pursuant to the lease, defendant tenant occupied the property and conducted an Acme supermarket therein.

Under date of May 14, 1979, defendant tenant and Fox Industries Inc. (hereinafter called Fox), not a party to this action, entered into a written agreement whereby tenant agreed to assign to Fox tenant's leasehold interests in a number of properties including the property in suit; attached to the agreement as Exhibit B was a blank form of "Assignment and Assumption Agreement" including a blank form of landlord's consent to the assignment, to be used for each of the assigned leaseholds. The agreement also provided in paragraph 7 thereof for settlement of the assignment transaction(s) 60 days from its date.

Settlement was held on July 16, 1979 when executed lease assignments were delivered to Fox together with a settlement letter of the same date from tenant to Fox reciting delivery of the assignments and further stating in relevant part:

"These assignments require consent of the land-

lord. The assignments are delivered to you on condition that you will obtain consent of the landlord for each assignment on or before August 31, 1979. If by such date you are unable to obtain the necessary consent, you will return the assignment or assignments for which consents have not been obtained and we will enter into a sublease for the properties involved upon the same terms and conditions as those set forth in the prime lease."

The settlement letter is endorsed with the agreement of Fox to its terms.

By "Sublease Agreement" of the same date (July 16, 1979), Fox as assignee of tenant sublet the premises to Nut Tree Inc. and G. Wade and Janet Martin (not parties to this action) as subtenant, for the conduct of a supermarket.

The property was not actually occupied by Fox; instead, it was occupied by its subtenant (Nut Tree and Martin). The exact date on which Nut Tree and Martin took possession is not clear in the record, but it was apparently sometime in July, 1979.[1]

Plaintiff landlord's first notice of the assignment by tenant to Fox was by letter from Fox to landlord dated July 30, 1979; on the same date, Fox tendered to landlord its check for the rental for the premises. By letter of landlord to tenant dated August 3, 1979, landlord informed tenant that the assignment to Fox without landlord's consent violated the "spe-

1. The Nut Tree-Martin sublease is dated July 16, 1979. By letter of July 30, 1979 Fox notified plaintiff landlord that ". . . we are in the process of investing considerable dollars to upgrade, remodel and renovate the room." Paragraph 12 of the complaint avers that: "On or about July 30, 1979, while defendant [Tenant] was in possession of the leased premises, G. Wade Martin and Janet Martin [subtenant with Nut Tree] did make certain alterations to the leased premises. . . ." Paragraph 12 of tenant's answer admits those averments.

cific conditions of the aforementioned lease" and that landlord "views your default as immediately terminating the lease and demands immediate possession of the premises." On the same date, landlord returned Fox's rental check. Said notice of August 3 was received by tenant on August 6, 1979. On August 7, 1979 tenant issued and mailed to landlord tenant's check for the rental which landlord holds but refuses to accept; subsequent rental checks have also been delivered to landlord which it likewise holds unaccepted.

As a result of landlord's refusal to consent to the assignment, tenant and Fox entered into a sublease of the premises supplanting the unconsented assignment. The tenant-Fox sublease was executed by Fox on or shortly before August 17, 1979, was executed by tenant on or shortly before August 22, 1979, was mailed to Fox on the latter date, and was backdated to July 16, 1979.

The alterations referred to in Fox's letter of July 30, 1979 above quoted were in fact made by Fox's subtenant (Nut Tree-Martin) and consisted of removal of a portion of a wall at the rear of the building and installation of an additional door to accommodate merchandise deliveries.

## DISCUSSION

### Prohibition Of Assignment Of Lease

The legal theory of plaintiff landlord's action to recover possession of the leased premised is that defendant tenant has violated the provision in the lease prohibiting its assignment without landlord's consent, "immediately terminating the lease" and entitling landlord to "immediate possession of the premises" as stated in landlord's default notice of August 3, 1979 to tenant. The defense theory is that

defendant tenant did not assign the lease but instead sublet the premises which is expressly permitted by the lease.

The problem in this case is complicated by the method used by tenant in dealing with Fox: instead of subletting to Fox without landlord's consent subject to converting the sublease to an assignment in the event landlord consented thereto (clearly a proper action without legal complications), tenant chose to assign the lease to Fox without landlord's consent (a prohibited action) subject to being converted to a sublease in the event of failure to obtain landlord's consent, thus raising legal questions concerning the validity of the transfer to Fox and its effect upon the lease which would have been avoided by initially using the sublease.

We should first have in mind the relevant provisions of the lease. Paragraph 19 contains the prohibition of assignment and provides as follows:

"Tenant shall not assign this lease without the written approval of Landlord, which approval shall not be unreasonably withheld by Landlord. Tenant shall have the right to sublet the whole or any part of the premises herein demised."[2]

2. The named tenant in the lease is Acme Markets, Inc. a Delaware corporation. On December 29, 1973 the lease was assigned by that corporation to Acme Markets, Inc. a Pennsylvania corporation, with landlord's consent. The latter corporation is the defendant in this case and is the party referred to in the opinion as tenant.

Where a lease prohibits assignment of the lease without the landlord's consent, and the landlord consents to an assignment, the assignee is no longer bound by the prohibition as to future assignments, unless the lease or assignment is so worded as to make the prohibition binding upon the assignee. See Lowry v. Atlantic Coal Company, 272 Pa. 19, 115 Atl. 847 (1922), appeal from this court; Saligman v. S.R.D. Co., 17

Paragraph 33 of the lease provides for its termination in event of default and reads as follows:

"It is further agreed that if the said rent shall at any time be in arrears and unpaid, or if Tenant shall fail to comply with the conditions of this lease, or written notice given under the terms hereof, or shall not well and truly perform and fulfill all and every one of the covenants and agreements herein contained on the part of Tenant to be performed and kept, and after written notice by Landlord to Tenant setting forth said default and Tenant has not corrected the same within fifteen days after the receipt of said notice by Tenant, but if said default is one that cannot reasonably be corrected within said fifteen day period, then a reasonable time thereafter, in any such event then this lease shall, at the option of the Landlord, cease and absolutely terminate and Landlord shall have any and all rights of action against Tenant for possession, for the collection of rent, or otherwise, as may be allowed by law in the state of Pennsylvania and under the terms of this lease."

A lessor may, by appropriate provisions in the lease, impose restrictions upon or take away the

Bucks 522 (1968); Sum. Pa. Jur., Landlord and Tenant §140; 21 P.L.E., Landlord and Tenant §84, fn.25.5; 51C C.J.S., Landlord and Tenant §34c; compare Shafer v. Cascio, 288 Pa. 56, 66, 135 Atl. 639 (1927), appeal from this court.

Paragraph 41 of the lease in this case expressly makes the lease binding upon the "heirs, executors, administrators, successors and assigns" of each party, and the terms of the assignment above referred to and of the assignee's acceptance thereof expressly binds them both to all terms and provisions of the lease. Accordingly, the prohibition of assignment in paragraph 19 of the lease continues to bind tenant, unaffected by landlord's consent to the initial assignment. That conclusion has not been questioned by either party in this case.

right of the lessee to assign the lease: 21 P.L.E., Landlord and Tenant § 82; Sum. Pa. Jur., Landlord and Tenant § § 136-138; 51C C.J.S., Landlord and Tenant § 33; compare Restatement, 2d, Property, § 15.2. A prohibition upon assignment is a restraint on alienation; the authorities recognize several types of such restraint in terms of their legal consequences, as follows: (1) automatic forfeiture restraint, (2) optional forfeiture restraint, (3) nullifying or disabling restraint, and (4) promissory restraint.

A *forfeiture restraint* is one which results either *automatically* or *optionally,* in a forfeiture or termination of the interest in the lease of the party violating the restraint. These restraints are described in Restatement, 2d, Property, § 15.2, comment b, as follows:

"b. Forfeiture restraint on alienation. The most common type of restraint on alienation imposed on a tenant is a forfeiture restraint under which the landlord reserves the right to reenter and take possession of the leased property in the event the tenant transfers his interest in the leased property without the consent of the landlord. The landlord has the option to terminate the lease if a transfer is made without his consent, or to ratify the transfer and enforce the other terms of the lease. The lease could provide that it would automatically terminate in the event the tenant transferred his interst in the leased property without the landlord's consent, but such a provision would be undesirable from the landlord's standpoint because it would in effect give the tenant the right to terminate the lease at any time by making a transfer."

A *nullifying or disabling restraint* is one which results merely in nullifying an attempted aliena-

tion in violation of the lease, thus preserving the tenant's estate without terminating or forfeiting the lease, and is described in Restatement, 2d, Property, § 15.2, comment c, as follows:

"c. Disabling restraint on alienation. A disabling restraint on alienation by a tenant is one that makes an attempted transfer by the tenant of his interest in the leased property without the landlord's consent a nullity. The lease continues in effect and the tenant's interest remains with him as though the attempted transfer had not been made. The disabling restraint is more objectionable from a public policy standpoint because it imposes a complete freeze on the movement of ownership. It may be more advantageous to the landlord than a forfeiture restraint because it gives the landlord the option to keep the estate in the tenant or let it pass to someone else by consenting to the alienation. The [optional] forfeiture restraint only gives the landlord the option to take the estate back or to let it go to someone else."

A *promissory restraint* is a forfeiture or disabling restraint which includes a promise or covenant against violation; violation gives the injured party the additional remedies available for failure to perform other promises contained in the lease. See Restatement, 2d, Property, § 15.2, comment d.[3]

The parties to a lease may use any of these types of restraint or combination thereof at their election,

---

3. Types of restraints may be combined. Thus a promissory restraint may be superimposed upon either a forfeiture or a disabling restraint, see Restatement, 2d, Property, § 15.2, Reporter's Note 4 and cases there cited. Although a forfeiture restraint and a disabling restraint are inconsistent, they could be combined as optional alternatives. The same is true of automatic and optional forfeiture restraints.

and can eliminate the legal problem of determining what sort of restraint they have created if they use language in the lease which plainly states what they intended. "As usual in contract cases, the problem is to determine what the parties intended when they did not clearly express themselves." Lyons v. Kalp, 38 Somerset 1, 4 (1979). Sometimes the parties will state rather clearly what each promises to do, or not to do, but fail to state what the consequence shall be of breaking the promise, leaving that problem to an outside referee or court. Consequently, the courts have developed several rules to aid in the interpretation of contractual restraints on alienation, as follows:

(1) Our society, built as it is upon the private ownership of property, prizes as a basic right and social value the freedom to transfer private property without restriction; the freedom to contract and to engage in trade and commerce are similar fundamental values in our society. At the same time, we recognize that some restrictions are necessary or desirable, especially when parties freely contracting agree on them and when the restrictions are reasonable and not unnecessarily restrictive. Compare Junior Form Lingerie v. J. D. Operating Inc., 35 Somerset 336, 343 (1978), restraint of trade; Metzner v. Soles, 28 Somerset 261, 268 (1973), quoting from Jones v. Park Lane for Convalescents, [384 Pa. 268, 271, 272, 120 A. 2d 535 (1956)], deed restriction. In this tension between freedom and restraint, freedom is preferred and restraint is allowed only when it can be justified by some constructive purpose. Compare Junior Form Lingerie v. J. D. Operating Inc., supra, 344, non-competition covenant; Miller v. Nationwide Ins. Co., 70 D. & C. 2d 338, 30 Somerset 44

(1975), insurance contracts of adhesion. As stated in Restatement, 2d, Property, Chapter 15, Introductory Note, §15.1:

"Over the years there has been a constant battle between the forces that seek to restrain the alienation of property interests and the forces that regard any impediment to the free transferability of property interests as detrimental to society. In only a few instances have restraints on alienation survived this long battle."

Consequently, in construing contractual restraints upon alienation this preference for freedom of alienation is expressed in the canon that restraints upon alienation are disfavored and therefore are strictly construed in favor of permitting transfer: 51C C.J.S., Landlord and Tenant §33a. Thus in the law of landlord-tenant, each party has the full and unrestricted right to transfer his interest in the leased property to others, which includes the tenant's right of assignment, sublease or otherwise, except to the extent clearly and properly prohibited by the contract of the parties. See Wahl and Jones v. M. F. Land Company, 30 Somerset 291 (1975); 51C C.J.S., Landlord and Tenant §31.

(2) When a restraint upon transfer is clearly created, its extent will be kept as minimized as the language of the restraint allows. As stated in Restatement, 2d, Property, §15.2, comment e: "A restraint on alienation will be narrowly construed to keep the restraint as limited as is consistent with the language describing the restraint. This policy of narrowly construing the scope of a restraint is consistent with the general policy against restraints on alienation." Accord: Wahl & Jones v. M. F. Land Company, supra; Metzner v. Soles, supra.

(3) Once the existence and extent of the restraint on alienation are established, but the parties have not clearly fixed the consequences of breach of the restraint, the courts will confine the remedy to that which is least harsh and most favorable to sustaining the transfer as is consistent with the language of the contract, and the policy favoring freedom of transfer. Forfeiture of one's rights or estate for breach of a covenant or contractual promise is such a harsh and radical remedy compared with damages, nullification or injunction, that forfeitures are and long have been in judicial disfavor: Wahl and Jones v. M. F. Land Company, supra, 300; 51C C.J.S., Landlord and Tenant §§ 35, 105, 52A C.J.S., Landlord and Tenant § 718. Thus the courts have developed the maxims: "[F]orfeitures are odious," Elizabethtown Lodge v. Ellis, 391 Pa. 19, 26, 137 A. 2d 286 (1958); "[E]quity abhors a forfeiture," Penn-Ohio Gas Co. v. Franks' Heirs, 322 Pa. 233, 237, 185 Atl. 280 (1936). "Consequently, the remedy of forfeiture must be expressly created, will not be implied, and if two constructions of an instrument are reasonable, one favoring and one disfavoring forfeiture, the latter construction will be adopted." Wahl & Jones v. M. F. Land Company, supra, 300. Accord: Swartz v. Bixler, 261 Pa. 282, 104 Atl. 591 (1918); Williams v. Notopolos, 259 Pa. 469, 103 Atl. 290 (1918).

In the present case, paragraph 19 of the lease expressly prohibits assignment of the lease without the landlord's consent.[4] Moreover, it is plain that the lease creates an optional forfeiture restraint;

---

4. Under paragraph 19 of the lease, landlord's consent is unnecessary if consent is unreasonably withheld. Compare Restatement, 2d, Property, § 15.2, comment g. In this case, unreasonable withholding of consent is not an issue.

paragraph 33 of the lease expressly provides for forfeiture (termination) of the lease for failure to "well and truly perform all and every one of the covenants and agreements herein contained on the part of the Tenant to be performed and kept. . . ." Other language in paragraph 33 makes it clear that forfeiture is *optional* with landlord, and is not *automatic* as plaintiff asserted in the default notice of August 3 and in the pleadings.[5]

Paragraph 33 of the lease, however, imposes some express conditions precedent upon exercise of the optional forfeiture; in order to sustain exercise of that option, plaintiff must establish: (1) a violation of the lease (paragraph 19, prohibition of assignment), (2) prior written notice by landlord to tenant setting forth the violation (default), and (3) failure of tenant to correct the violation (default) within 15 days after tenant's receipt of notice (or within a reasonable time thereafter if the default is one which cannot reasonably be corrected within the 15 day period). Testing plaintiff landlord's case by these requirements, we find that it has established condition (2) supra, but has failed to establish condition (1) and possibly also condition (3) supra.

A. Condition (1)—Violation Of Covenant Against Unconsented Assignment of Lease:

Having in mind that the covenant contained in lease paragraph 19 prohibits only an assignment of

5. There is no basis for construing paragraph 19 as a nullifying or disabling restraint. Compare Howland v. Plymouth, 319 Mass. 321, 65 N.E. 2d 535, 536 (1946), in which the lease provision requiring the lessor's consent to assignment stated: "Otherwise said assignment is to be null and void." Paragraph 19 is a covenant making the restraint on assignment also promissory; see Williams v. Notopolos, and Wahl and Jones v. M. F. Land Company, both supra.

the lease but expressly permits subletting, we note that "the distinction between lease [and] sublease . . . is not determined merely by the terminology or labels used by the parties, but by the substance of the transaction." Wahl and Jones v. M. F. Land Company, supra, 295.

An assignment is a transfer of the tenant's interest in the lease without material alteration or addition to its provisions in which no reversion is left in the original lessee; in contrast, a sublease is a transfer by the lessee of all or part of the leased premises for a lesser term than the lessee has therein, or for the same term but for a different rent or upon different provisions: Morrisville Shopping Center v. Sun Ray Drug Co., 381 Pa. 576, 112 A. 2d 183 (1955); Wahl and Jones v. M. F. Land Company, supra; Sum. Pa. Jur., Landlord and Tenant §170. An assignment is essentially a sale of the lease: Goldberg v. Grossman, 105 Pa. Superior Ct. 50, 56, 160 Atl. 138 (1932); 21 P.L.E., Landlord and Tenant §86.[6] A mere right of use and occupancy without creating the relation of landlord and tenant, is neither lease nor sublease: Wahl and Jones v. M. F. Land Company, supra. In this case, the "Assignment and Assumption Agreement" document of July 16, 1979 from tenant to Fox has the characteristics of a true assignment (containing neither significant alteration of provisions nor reversion), and the later executed "Sublease Agree-

---

6. It has been held that a transfer of the lease may be an assignment if the tenant-assignor reserves minor rights, such as a right of entry for breach of condition subsequent and/or a higher rent. See Ottman v. Albert Co., 327 Pa. 49, 192 Atl. 897 (1937); Ottman v. Nixon-Nirdlinger, 301 Pa. 234, 151 Atl. 879 (1930); Sum. Pa. Jur., Landlord and Tenant §172; 51C C.J.S., Landlord and Tenant §37(2).

ment" document of the same date between tenant and Fox has the characteristics of a true sublease (for a shorter term leaving a reversion in the sublessor and containing provisions in addition to those of the lease).

The assignment is unconditional in its terms and, if we were dealing with it alone apart from the letter of the same date (quoted, supra, at page _____ of this opinion) which accompanied delivery of the assignment document, plaintiff landlord would have established an unconsented assignment in violation of paragraph 19's prohibition.[7] But the letter made the assignment subject to the express condition that it be consented to by landlord on or before August 31, 1979. Although the assignment document makes no reference to the letter, the letter refers to and accompanied delivery of the assignment document, and the two writings must be read together as defining the intentions of the parties (tenant and Fox) respecting the effectiveness of the assignment document, in effect incorporating into

7. Landlord has established timely non-consent to an assignment. Although the assignment document was made July 16, 1979, landlord was not notified thereof until it received tenant's letter of July 30, 1979; landlord notified tenant of its refusal to consent in its default letter of August 3, 1979. A provision prohibiting assignment without consent carries with it an implied duty upon the tenant to seek the landlord's consent before making the assignment, as one of the purposes of the restraint is to inform the landlord if and when a prohibited transfer is to be made: Restatement, 2d, Property, §15.2, comment g. If the landlord does not refuse consent within a reasonable time he may be held to have waived the prohibition of assignment: Restatement, 2d, Property, §12.2, comment f; see, also, 51C C.J.S., Landlord and Tenant §34; and Sum. Pa. Jur., Landlord and Tenant §139. Here, landlord acted promptly in refusing consent with respect to which there is no material or disputed fact.

the assignment document the letter's express condition. All writings which express the contractual agreements and intentions of the parties whose terms indicate an intention that they be interpreted together must be so interpreted: 8 P.L.E., Contracts §§156-157; 17A C.J.S., Contracts §§298-299. As stated in 51C C.J.S., Landlord and Tenant §232(13):

"In ascertaining the intention of the parties to a lease, separate or different instruments may be construed together where they are executed at the same time, relate to the same subject matter, and are between the same parties, or where they are parts of the same transaction. The terms of another writing may also be incorporated in the lease by reference."

This is especially true when a contractual document must be delivered in order to be effective and delivery is made conditional by the terms of an accompanying document. Sealed instruments generally and leases of land in particular must be delivered to become effective; delivery occurs when the maker parts with possession of the document with intent that it take effect, which may occur by mailing. See 8 P.L.E., Contracts §27 (Delivery); 17 C.J.S., Contracts §64; 51C C.J.S., Landlord and Tenant §219a and c. Thus, effectiveness is dependent upon the intention of the parties in making and accepting delivery which in this case is defined by the letter. On acceptance of delivery, see 51C C.J.S., Landlord and Tenant §219b; 17 C.J.S., Contracts §64 (Acceptance).

Tenant's letter of July 16, 1979 states that the assignment document is "delivered to you [Fox] on condition that you will obtain consent of the landlord . . . on or before August 31, 1979. If by such

date you are unable to obtain the necessary consent, you will return the assignment. . . and we will enter into a sublease for the . . ." property. From the language of the assignment document and the letter alone, it cannot be determined whether the condition is intended to be precedent (in which event the assignment would have no effect unless and until the required consent of the landlord is timely obtained) or subsequent (in which event the assignment would become immediately effective subject to later becoming ineffective if the landlord's consent is not timely obtained). See 8 P.L.E., Contracts §§262-264; 17A C.J.S., Contracts §§337-339; 51C C.J.S., Landlord and Tenant §243. Obviously, were the condition precedent in character, it would prevent the assignment from becoming effective and no violation of the prohibition of assignment would result, defeating plaintiff's case on that ground. See 51C C.J.S., Landlord and Tenant §33d(1). Since this case is before us on defendant tenant's motion for summary judgment, we shall accept the construction most favorable to landlord as opponent of the motion, that is, that the assignment was intended to take effect upon delivery and that the letter creates a condition subsequent; under that assumption, there is no issue of material fact. See Intermediate Unit 08 of Bd. of School Dir., v. Charlesworth, 30 Somerset 53, 56 (1975). On a motion for summary judgment, not every issue of relevant fact is material within the meaning of Pa.R.C.P. 1035(b). See Ryan v. Furey, 437 Pa. 96, 102, 262 A. 2d 305 (1970). That the condition has subsequent rather than precedent effect is confirmed by the conduct of the parties to the assignment which is an important factor in construing writings, 51C C.J.S., Landlord and Tenant §232(11), in that Fox's subtenant (Nut Tree-

Martin) took possession of the premises in July, 1979, before determining whether landlord would consent to the assignment and before August 31 (the deadline for such determination), thus presupposing effectiveness of the assignment upon delivery.

From this it would seem to follow that the assignment, having become effective from July 16, 1979 until landlord's refusal to consent became operative and nullified the assignment, violated paragraph 19's prohibition of unconsented assignment. But defendant tenant argues that such a conclusion is more apparent than real, and that in substance the transaction produced only a sublease which is permitted by the lease. The question thus presented may be stated: Where a tenant executes and delivers an assignment of lease without the landlord's consent, upon a condition subsequent nullifying the assignment if the landlord refuses timely consent thereto and providing that absent such consent the assignment shall be replaced by a sublease, does such an assignment violate a provision in the lease which grants the landlord the option to declare a forfeiture of lease for an unconsented assignment but which permits the sublease? No authoritative answer has been furnished to or found by us, so we must make our own analysis on the basis of established principles of landlord-tenant and contract law. After doing so, we answer the question in the negative and conclude that the assignment document in question is not a violation of the lease under the circumstances of this case for the following reasons:

(1) The prohibition of unconsented assignment contained in paragraph 19 of the lease and the right of forfeiture contained in paragraph 33 thereof

were obviously included in the lease for landlord's benefit. Their combined object and purposes are to enable landlord to avoid the consequences of an assignment of lease if it wished to do so, but to disable landlord from avoiding the consequences of a sublease. The substitution of the permitted sublease for the prohibited assignment in this case gave landlord substantially what it bargained for in its lease, and landlord should not therefore be allowed to cause a forfeiture of tenant's estate for technical reasons which in terms of landlord's essential rights are virtually meaningless.

(2) Landlord has obtained what it bargained for in the lease insofar as use and occupancy of the premises is concerned. By permitting subletting, it is obvious that the purpose of the restraint upon assignment in paragraph 19 cannot be to prevent or control a transfer of the possession of the premises to a stranger to the original lease (Fox and Nut Tree-Martin). Compare Gliem v. Connor, 60 D. & C. 280, 282 (1947), and Singer v. Krohnberg, 317 Mo. App. 207, 294 S.W. 728 (1927), cited in Restatement, 2d, Property, §15.2, Reporter's Note 5. The character of the possession of the leased premises for a supermarket was the same under the original lease, the assignment to Fox and the subleases (except for the alteration made to the premises, later discussed in this opinion). Accordingly, landlord has not been prejudiced or adversely affected by the use of the aborted assignment, insofar as use and occupancy of the premises is concerned.

(3) Landlord has obtained what it bargained for in the lease insofar as legal incidents and consequences of the arrangement are concerned. Although the unconsented assignment may have been effective as between assignor and assignee for

a brief time, it was unenforceable against landlord: 51C C.J.S., Landlord and Tenant §42(b). Since the forfeiture for the violation is optional with landlord, and not automatic, the assignment may be said to be voidable by landlord, not void. See Sum. Pa. Jur., Landlord and Tenant §321; Towt v. Philadelphia, 173 Pa. 314, 33 Atl. 1034 (1896); Yannuzzi v. Pa. Racing Commission, 37 Pa. Commonwealth Ct. 288, 291, 390 A. 2d 331 (1978); Steckel v. Dolinger, 28 D. & C. 238, 240 (1936). Landlord's refusal of consent to the assignment voided it ab initio, no intervening equity to the contrary having arisen. See Allegany Gas Company v. Kemp, 316 Pa. 97, 105-6, 174 Atl. 289 (1934); Mosko v. Forsythe, 102 Colo. 115, 118, 76 P. 2d 1106, 1107 (1938); 92 C.J.S. Void, 1020; 27B C.J.S., Doctrine (Doctrine of Relation) 967; 26 C.J.S., Deeds §94. So, the subleases are properly pre-dated and regarded as effective July 16, 1979.[8]

---

8. Basically, an assignment creates no new estate but merely transfers an existing estate to other hands: it transfers only privity of estate, not privity of contract: 51C C.J.S., Landlord and Tenant §42a. Thus, privity of estate automatically arises between the landlord and the assignee making the landlord liable to the assignee for performance of the covenants of the lease, Sum. Pa. Jur., Landlord and Tenant §142, making the assignee liable to the landlord for breach of the lessee's covenants which run with the land and inhere in the landlord-tenant relationship privity of estate, see Restatement, 2d, Property §16.3, comment (b); Sum. Pa. Jur., Landlord and Tenant §145, and preserving contractual liability of the assignor to the landlord on the lease, §155.

On the other hand, a sublease creates a new landlord-tenant, relationship between sublessor and sublessee, without affecting the legal relationship (privity of estate and of contract) between the original landlord and the tenant-sublessor, Sum. Pa. Jur., Landlord and Tenant §§160-163; and the relationship between sublessor and sublessee is precisely the same as between any landlord and tenant, except that the sublessee

(4) Our conclusion is most consistent with the intentions of both parties as expressed in the lease, 51C C.J.S., Landlord and Tenant §232(2), and 21 P.L.E., Landlord and Tenant §27, it is the most reasonable and equitable interpretation of the lease under the circumstances, C.J.S. Landlord and Tenant §232(4); and, most important, it advances the policies of the law disfavoring forfeiture and favoring free alienation of property interests as previously discussed.

B. Condition (2)—Prior Written Notice Of Default:

As previously stated, landlord has met condition

cannot acquire any rights in violation of the prime lease, §168, and The Landlord and Tenant Act of April 6, 1951, P.L. 69, 68 P.S. §250.105).

Some authorities hold that an assignment of a lease, while not severing the privity of contract between the landlord and the original tenant-assignor, renders the assignor's contractual liability of the landlord secondary to the liability of the assignee to the landlord on covenants which the assignee is liable to perform, i.e., those running with and annexed to the leasehold and those contractually assumed, see Restatement, 2d, Property §16.3. See also 51C C.J.S., Landlord and Tenant §45(2). Comment i to §15.1 of Restatement, 2d, Property, states:

"It is usually in the landlord's interest to keep the tenant of his choice in the position of primary liability on the obligations under the lease. If the tenant makes an assignment, rather than a sublease, the tenant's liability on the obligations under the lease becomes secondary or is eliminated (see §§16.1 and 16.3). Thus it is usually in the landlord's interest to treat a transfer by the tenant as a sublease whenever that is possible."

Whether the foregoing represents the law of Pennsylvania is not clear. See Gale Industries v. Bristol Farmers Market & Auction Co., 431 Pa. 464, 471, 246 A. 2d 391 (1968); Ottman v. Nixon-Nirdinger, supra; Sum. Pa. Jur., Landlord and Tenant §§155-157; 21 P.L.E., Landlord and Tenant §88. See, also, Ghegan v. Young, 23 Pa. 18, 20 (1854).

(2) by giving notice of default in its letter of August 3, 1979.

While it is arguable that the default letter is invalid because it claims immediate forfeiture instead of notifying tenant that the forfeiture will occur if and when the default is not corrected within the time allowed by the lease, that question has not been raised. It is also arguable that the notice of violation and notice to vacate must be separately given, since forfeiture is not automatic, see Elizabethtown Lodge v. Ellis, supra, and The Landlord and Tenant Act, 68 P.S. §250.501. But that issue, too, has not been raised.

C.  Condition (3)—Non-Correction Of Default:

The third and final condition upon landlord's optional termination of the lease is that tenant has not corrected the default after notice thereof and within the allowable time for correction. In discussing this aspect of the case, we assume that tenant has by making the unconsented assignment of lease violated paragraph 19's prohibition of assignment; since we have already concluded that there has been no such violation as a matter of law, the assumption is made here for purposes of this discussion only.

The same reasons which influenced us in determining that there was no default by tenant's substituting the sublease for the aborted assignment also lead us to conclude that the substituted sublease corrected the prohibited assignment and constituted a correction of the default (had there been one), within the meaning of lease paragraph 33— that is, tenant by the sublease merely gave landlord what the parties bargained for, landlord was not prejudiced by the substitution arrangment, and allowing correction of default in that manner gives

effect to the intentions of all parties and to the fundamental policies of law favoring transfer and avoiding forfeiture.

The problem with grounding a summary judgment on this alternate ground of correcting a default is timeliness. A correction of default must be accomplished under lease paragraph 33 within 15 days after tenant's receipt of the notice or within a reasonable time thereafter if the default is one which "cannot reasonably" be corrected within the 15 day period. Here tenant received the default notice on August 6, 1979; the executed sublease was mailed (delivered) to Fox as sublessee on August 22, 1979, 16 days after receipt of the notice, one day late unless the reasonable time provision of paragraph 33 can be invoked. In order to use a reasonable time as the allowable period it must be shown beyond the "slightest doubt" (2 Goodrich-Amram 2d §1035(b):3) that the default "cannot reasonably be corrected within said 15 day period." The word "cannot" means "inability." DiBenedetto v. DiRocco, 372 Pa. 302, 304, 93 A. 2d 474 (1953); 12A C.J.S., Can (578), and Cannot (900). The term "reasonably" means that the inability must be based upon a rational explanation consistent with accepted practices for the activity in question; the term negates an absolute inability and instead implies inability "in a moderate degree." 75 C.J.S., Reasonably (638). We find no authoritative definition of the phrase "cannot reasonably;" but in matters of business involving communications by mail between business people and legal counsel looking toward preparation, execution and delivery of the substituted sublease, we think the criterion set forth in Titus v. Bradford Railroad Co., 136 Pa. 618, 20 Atl. 517 (1890), is helpful here; there the court

was construing the term "reasonably safe" in a negligence case, and stated at p. 626 that "'reasonably safe' means safe according to the usages, habits, and ordinary risks of business."

Taking into consideration the relevant events in this case, that after receipt of the default notice on August 6 tenant by letter of August 7 wrote its counsel to prepare the sublease, that by letter of August 13 counsel mailed the sublease agreements to tenant, that by letter of August 15 tenant mailed the sublease agreements to Fox for execution and return, that by letter of August 17 Fox returned the agreements to tenant executed by Fox for further execution by tenant, that said letter of August 17 was received by tenant on August 20 and that tenant's inter-office memo of August 21 forwarded the agreements for further execution to tenant's vice president, and that by letter of August 22, 1979 the fully executed sublease was mailed to Fox thus completing execution and delivery within 16 days, it seems fair to say that tenant "cannot reasonably" within normal business expectations have corrected the default earlier, thus triggering tenant's duty to correct default not within the 15 day period but within a "reasonable time" after receipt of the default notice on August 6. But, despite the fact that tenant seems to have acted within a reasonable time, the questions whether under the circumstances the assumed default "cannot reasonably be corrected within said 15 day period" and was "corrected within a reasonable time thereafter" are jury questions. See 8 P.L.E., Contracts §244; 17A C.J.S., Contracts §632. In an action of ejectment the parties have a right to a jury trial on questions of fact, see 12 P.L.E., Ejectment §62, and Gaumer and Durst v. Fiscus and Durst, 38 Somerset 140,

146, fn.3 (1979), and the court cannot decide those issues on a motion for summary judgment. Compare Robenson v. Pels, 203 Pa. 399 (1902) involving timeliness of communication.

Alteration Of Premises:

As a general rule, a tenant has no right to make *material* alterations to the leased property without the consent of the landlord: Sum. Pa. Jur., Landlord and Tenant §63; 51C C.J.S., Landlord and Tenant §372a. Alterations which are slight or reasonably within the contemplation of the parties consistent with the objects and terms of the lease generally receive judicial approval without the landlord's consent: 51C C.J.S., supra. As stated in Smith v. Chappell, 25 Pa. Superior Ct. 81, 87 (1904):

"The principal question before the judge was whether the alterations made and threatened by the defendant were material and substantial, and of such a character as to be an injury to the freehold, or were of such a nominal or trivial charter [character] as tenants are permitted to make in the ordinary occupancy and use of the property, as contemplated by the lease under which the premises were demised. This was a question of fact, under the evidence, for the decision of the judge who heard the case."

See, also, Restatement, 2d, Property, §12.2. In the instant case, landlord consented to alterations in paragraph 20 of the lease which provides as follows:

"Tenant shall have the right, at its own expense, to make any additions and alterations to or in the demised premises which it may consider necessary for the carrying on of its business, which said addi-

tions and alterations shall become the property of Landlord, and Tenant shall not be required to remove the same at the termination of this lease or any renewal thereof."

The alteration in this case was made by Fox at the time when it held the assignment from Acme, and apparently the actual work was done by Fox's subtenant (Nut Tree-Martin).

Plaintiff landlord concedes that Fox was entitled to the benefit of paragraph 20's right to make alterations if the lease had been properly assigned by tenant to Fox, because Fox would then be "tenant" within the meaning of paragraph 20's language. But plaintiff further contends that if Fox is held to be tenant's sublessee, Fox was not entitled to any right of alteration since paragraph 20 expressly grants the right to "tenant" without mentioning sublessees, notwithstanding that the lease permits subleases and that the sublease from tenant to Fox grants "all of the aforesaid rights, titles and interests" of tenant in the principal lease; and plaintiff therefore contends that it may terminate the lease for breach of paragraph 20.[9]

It is true that the lease does not expressly make the benefit of paragraph 20 available to sublessees; paragraph 41 of the lease states: "All rights and liabilities herein given to, or imposed upon either of the parties hereto, shall extend to the heirs, executors, administrators, successors and assigns of such party." It has not been and could not well be argued that a sublessee of tenant has *succeeded* to the position or status of a tenant to landlord, as would be the case had an assignment of the lease

9. There is no attempt by defendant tenant to establish that the alteration made was not material. Both parties treated the alteration as being within the terms of paragraph 20.

been made. It is also true as plaintiff argues that the benefit of paragraph 20's right to make alterations automatically passes to an assignee of the lease as a covenant running with the land; the covenant meets the requirements for running with the land: it touches and concerns the land (Restatement, 2d, Property, §16.1, comment b), and an assignment makes the assignee a tenant by bringing him into a landlord-tenant relationship with the original lessor (privity of estate) and giving him the status of a tenant within the language of paragraph 20: Restatement, 2d, Property, 21 P.L.E., §16.2(3). See also: 51C C.J.S., Landlord and Tenant §§44(1), (2) and (3), and 240; Sum. Pa. Jur., Landlord and Tenant §§142-143; 21 P.L.E., Landlord and Tenant §§29 and 88; Restatement, 2d, Property §16.1, comment e. On the other hand, where tenant sublets the property instead of assigning the lease a landlord-tenant relationship is created between assignor and assignee only, not between the original tenant and sublessee so that there is no privity of estate between the latter parties. See Restatement, 2d, Property, §16.1, comment e; 51C C.J.S., Landlord and Tenant §§46-47. Consequently, there is no automatic running of covenants in the original lease with a subletting of the premises by the tenant and therefore Fox and Nut Tree-Martin did not automatically by virtue of the sublease become entitled to the right to alter the premises as granted in paragraph 20 of the lease.

The question remains, however, whether the provision in the sublease granting to Fox all of tenant's rights under the original lease is a valid assignment of the benefit of landlord's covenant permitting alterations by tenant. In landlord-tenant law, a lease creates both privity of estate between the parties to the lease, and privity of contract: Restate-

ment, 2d, Property § 16.1, comments c and e. There is neither privity of estate nor privity of contract between a sublessee and the original lessor by virtue of the mere fact of subletting. See Sum. Pa. Jur., Landlord and Tenant § 163. If, however, the sublease validly assigns to the subtenant the benefit of the lessor's covenant in the principal lease regarding alterations to the premises, the sublessee moves into privity of contract with the lessor to that extent: Restatement, 2d, Property, § 16.2, comment c.

Thus, there are alternative modes by which a transferee may obtain the benefit of the lessor's covenant, as stated in Restatement, 2d, Property, § 16.2(2): "A transferee of an interest in the leased property is entitled to the benefit of an express promissory obligation under the lease to the extent the benefit is assigned to him by the transferor *or* it runs with the transferred interest." (Emphasis supplied.) See, also, Sum. Pa. Jur., Landlord and Tenant § 155. The matter is more fully explained in comment b to § 16.2 of the Restatement, supra, as follows:

"b. Assignment of benefit. The benefit of a promise in a lease, like any other contractual benefit, is assignable to the extent allowed by contract law. See Restatement of the Law, Second, Contracts § § 149, 152 to 155 (Tentative Draft No. 3, 1967): § 149 of the Contracts Restatement provides that contractual benefits are assignable unless assignment would materially change the obligor's duty or is precluded by statute, public policy, or a valid contractual restraint on assignment. The transfer of an interest in the leased property, however, is not in and of itself an assignment of the benefit of a promise in the lease. If the benefit of a promise in the lease would not otherwise run with the transferred

interest, it will remain with the transferor if he held it prior to the transfer, unless the transferor assigns such benefit to the transferee or to someone else."

There is nothing in the record of this case to indicate that assignment of the covenant for alterations and its exercise by any of the subtenants would materially change landlord's duty or increase landlord's burden or risk under the lease, nor does landlord make any such contention. The indications are to the contrary; the lease contemplates use of the premises as a supermarket, the premises are being used for that purpose by the sublessees, and the alteration in question is the installation of a door in the rear of the bulding to facilitate delivery of merchandise. Moreover, no authority has been furnished to or found by us holding such a landlord's covenant to be unassignable to a sublessee; on the contrary such an assignment was sustained in Klein's Rapid Shoe Repair v. Sheppardel Realty Co., Inc., 136 Misc. 332, 241 N.Y.S. 153 (1929). Compare Employees Consumer Organization v. Gorman's, Inc., 395 S.W. 2d 162 (Mo. 1965), landlord's covenant to rebuild not available to subtenant.

Therefore, unless the lease itself prohibits assignment of the covenant for alterations, defendant tenant has not violated the lease by assigning the benefit of that covenant and permitting its exercise by a sublessee. As stated in Restatement, 2d, Property, § 16.2, comment d:

"The parties to a lease may manifest an intention that the benefit of a promissory obligation in a lease is to be personal to the promisee, and if such intention is effectively manifested, the benefit will not run with the land to one to whom the benefited interest is transferred. Also the parties may provide that the benefit of the promise is not assignable."

The only relevant prohibition or manifestation of intention contained in the lease is that of paragraph 19 previously discussed, which provides in relevant part that: "Tenant shall not assign this lease without the written approval of the Landlord." That is a prohibition upon an assignment of the lease as a whole such as would terminate the landlord-tenant relationship (privity of estate) between the original parties to the lease, not upon a mere assignment of a particular contractual right or rights under the law of contracts in a permitted sublease or other contract. Compare Wahl and Jones v. M. F. Land Company, supra, holding that lease prohibition upon subletting "the premises herein demised" will be construed as applying to a sublease of the entire property but not to a sublease of only part thereof.

Our conclusion in favor of the assignment of the benefit of the covenant of paragraph 20 by tenant sublessee is further justified by the twin policies of the law discussed in the first part of this opinion disfavoring restraints on alienation and disfavoring forfeiture unless clearly stated. Were we to sustain plaintiff's contentions, we would be allowing a forfeiture for violation of a restraint on alienation which is not clearly expressed in the lease.

Under the circumstances, defendant tenant has not breached the lease by assigning to or permitting a subtenant to exercise the right to make the alteration to the premises complained of.

Summary Judgment:

Defendant is entitled to summary judgment as a matter of law on the ground that defendant has not violated the prohibition of assignment contained in paragraph 19 of the lease; on that ground there is no genuine issue of material fact for trial under Pa.R.C.P. 1035(b). Defendant is entitled to judg-

ment also on the ground of timely correction of default only if the trier of fact finds that defendant was unable reasonably to correct the default within the 15 day period but acted within a reasonable time in making correction. Granting summary judgment now (dismissing plaintiff's complaint) would foreclose defendant from trying the issue of timeliness of its corrective action. Accordingly, we will not grant the present motion for summary judgment; but if defendant renews the motion, electing to forego trial of the timeliness issue and to stand on our holding that there was no prohibited assignment of lease the renewed motion will be granted after notice to plaintiff and an opportunity to be heard.

## ORDER

Now, July 10, 1980, defendant's motion for summary judgment is denied.